Louise Sann, as Administratrix, etc., of William Sann, Deceased, Appellant, *v.* H. W. Johns Manufacturing Company, Respondent.

*Negligence — when not the proximate cause of an injury — an employee injured while attempting to rescue another who has voluntarily placed himself in a dangerous position.*

In an action where negligence was charged against a manufacturing corporation, it appeared that the plaintiff's intestate, William Sann, and a co-employee named Schroeder, were engaged in repairing a steam pipe in a washing machine which was absolutely necessary to the use of the machine. After they had finished their work, they, of their own accord, attempted to put a belt upon the washing machine, by which power was communicated to it from a shaft. This belt was too short and their efforts failed, whereupon a workman named O'Day, who was standing near by, voluntarily got upon a barrel and attempted to hold the belt a little from the main shaft, which at the time was revolving at full speed, so as to relieve the belt from the friction of the shaft and make it easier for Schroeder to throw the belt on the pulley attached to the washing machine. In doing this O'Day slipped from the barrel, and was caught in the belt and carried around the shaft. William Sann, seeing that O'Day was in peril, waited for him as he was carried around the shaft, and at his first opportunity caught hold of him and pulled him out of the loop. He thus saved O'Day, but was himself caught by the belt, was carried around by it many times, and was so injured that he died.

The defendant had not furnished the proper and ordinary appliances for throwing the belt upon the pulley, and the method attempted to be used, as above stated, was the usual one employed in this factory, and there was evidence that the belt was ragged and frayed, had cuts in it, and was sticky from resin.

*Held,* that, assuming that the belt or the machinery was defective, the plaintiff could not recover, as this negligence of the defendant was not the proximate cause of the death of the intestate;

That as the employees of the defendant had finished the work which they were ordered to do, *i. e.*, the repairing of the washer, their act in attempting to connect the belt was a voluntary one, in doing which they assumed all the risks connected with the handling of the belt;

That while the law recognized the natural instinct of man to go to the rescue of his fellowman in a situation of imminent peril, and would not hold it negligence *per se* for one to risk his own life in attempting to save another, yet the defendant was not thereby made liable in a case where the person in danger had not been placed in peril through the negligence of the defendant, but solely by his own voluntary act.

APPEAL by the plaintiff, Louise Sann, as administratrix, etc., of William Sann, deceased, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 30th day of November, 1896, upon the dismissal of her complaint directed by the court after a trial at a Trial Term of the Supreme Court held in and for the county of New York.

The action is brought to recover damages alleged to have been sustained by the widow and next of kin of William Sann, deceased, through the negligence of the defendant. The substance of the complaint is that deceased was at work in the defendant's factory trying to put the belt on a pulley of a certain felt washing machine; that while one of the employees was assisting the deceased to adjust the belt, the said employee was caught in the belt and carried around the shaft; that the deceased endeavored to rescue his co-employee from danger, and, in attempting to extricate him, was caught in the belt and was carried up over the shaft, and received the injuries from which he died. The negligence complained of was in omitting to furnish proper and suitable appliances to adjust the belt on the shaft and in failing to have a proper pulley on the felt washing machine and guards in and about the machinery, and also that the belt was in a defective, improper and negligent condition.

Upon the trial the facts developed were that the plaintiff's intestate, William Sann, on March 4, 1896, was in the employ of the defendant, a large manufacturer of asbestos, at his factory in the city of Brooklyn. On the day of the accident Sann and one Schroeder were directed to repair the pipes of the felt washing machine. This machine is very similar to the ordinary wash wringer used in private families for wringing clothes. It consists of two rollers, each about two feet long and one foot in diameter, coming together, between which the felt was passed and washed. Instead of being operated by a handle, as in the case of an ordinary wash wringer, a pulley was attached to an upright beam or piece of wood on one side of the rollers, and a belt hanging from and running on a main shaft was placed on the pulley, and the power thus transmitted by the belt from the revolving shaft to the pulley operated the rollers.

After repairing the steam pipes leading into the box on which the rollers were placed, Schroeder attempted to put the belt hanging from the main shaft upon the pulley attached to the felt washer, and Sann held the belt for him so as to steady it. Three or four efforts in this direction were unsuccessful. Thereupon a workman named O'Day, who stood by, voluntarily got on a barrel and attempted to hold the belt a little from the main shaft so as to relieve the belt from the friction of the shaft and thereby make it easier for Schroeder to throw the belt on the pulley. The shaft at this time was revolving at full speed. While O'Day was standing on the barrel attempting to hold the belt from the shaft, the belt slipped from the pulley on which Sann was attempting to put it, and either lapped or became stuck to the shaft and formed a loop, and O'Day was caught in the loop and was carried around the shaft. Sann, seeing O'Day's perilous position, waited for him as he was carried around the shaft, and at his first opportunity caught hold of him and pulled him out of the loop. He succeeded in saving O'Day, but was caught by the belt himself and carried around by it fifty or sixty times, and from the injuries thus received he died.

The evidence shows that no other means was furnished by the defendant for throwing on and off the belt, and that the method attempted was the usual one employed in this factory for this purpose, in which operation O'Day had on previous occasions assisted by doing exactly what he did at the time the accident happened. There was evidence also that the belt was ragged and frayed at the edges and had cuts in it, and was sticky from resin; and there was testimony directed to showing that the means furnished for putting the belt on the pulley were crude and dangerous, and that a different and safer method was generally employed in other factories.

Upon these and other facts appearing, the plaintiff claimed the right to go to the jury for the reasons, among others: (1) That the defendant was negligent in violating section 12 of chapter 409 of the Laws of 1886, as amended by section 10 of chapter 398 of the Laws of 1890, and, even if that statute did not apply, that it was a question for the jury to say, taking into consideration the risk and peril involved in adjusting the belt by the methods furnished by the defendant, whether the defendant was guilty of negligence

in failing to furnish a safer method for throwing on and off this belt ; (2) that the doctrine of obvious dangers and assumption of risk did not apply ; (3) that the question of contributory negligence was one for the jury ; (4) that the defendant's negligence was the direct and proximate cause of the death. This right was denied and the complaint dismissed, and judgment thereafter entered, from which this appeal is taken.

*Louis J. Vorhaus*, for the appellant.

*Herbert C. Smyth*, for the respondent.

O'Brien, J. :

As in our view the inferences to be drawn from the facts proven are fatal to plaintiff's recovery upon one ground, which we shall hereafter discuss, it is unnecessary to critically examine the various grounds so ably presented by the appellant, upon which it is claimed the liability of the defendant rests. But we shall assume that it was clearly shown that the method used in the defendant's factory to put on this belt was very risky and dangerous, and in violation of all the principles of mechanics. It is clear that, however defective the belt or the machinery employed, unless these were the proximate cause of the death of plaintiff's intestate — or in other words, unless the negligence of the defendant was the proximate cause — the plaintiff cannot recover. The deceased had charge of the job of repairing, and, to use the language of one of the witnesses, " if he saw anything was necessary to be done, he did it. This job they had was fitting the steam pipe and to see that everything was right on the machine. I know that it included seeing that everything was right on the machine because, without the steam pipe, the washer would not be of any use."

After they had finished their job, they attempted to put the belt on the washer, and this without its being their duty, or without receiving instructions to do so. On the day in question there was no felt to be washed and none in the room, and, therefore, the use of the washer was not then required. In repairing the steam pipes, Sann and Schroeder moved the felt washer from its original position, and the reason given for attempting to adjust the belt was to see if it was restored to its place, and it is a fair inference that failure

was due to the fact that the belt, at the time they tried to place it on the washer, was not long enough to reach from the shaft to the pulley. While they were atttempting to do this without instructions, or without its being in the line of their duty, O'Day volunteered his assistance. It was by this effort, in which the three were engaged, that the dangerous situation was created which resulted in O'Day's being placed in jeopardy, in rescuing whom Sann was killed. If they had not undertaken to handle the belt, the place where they were at work and the machinery that was in the room were in no sense dangerous, because the evidence is that the belt was tied in a knot, hanging up away from where the felt washer was standing. There was nothing in the condition of the belt that was not perfectly apparent and obvious to those then present by the use of ordinary observation. The situation before Sann and Schroeder attached the belt was one having no danger to any of the employees, and whatever danger came afterwards was created by their own acts. They assumed all the risks there were connected with the belt, because they were handling it when there was no necessity at all for their doing so, and it is difficult to get away from the inference of their negligence in attempting to place it on the pulley while the felt washer was so far away from the shaft that it was apparent that the belt was too short. And it is to this circumstance, undoubtedly, that the accident was due, because it created the difficulty of getting the belt to run from the revolving shaft to the pulley.

Upon these facts, the rule applied by the learned trial judge finds full support in authority. As said by him at the end of the case: "All this shows that, even if there was prior negligence on the part of the defendant in allowing the machinery to get out of order and repair, or in not complying with the requirements of the factory law, such negligence was not the direct and proximate cause of the accident, but only the remote cause. This is not enough. Negligence to be actionable must be the direct and natural and proximate cause of the injury." Undoubtedly, if the proximate cause of the perilous position in which O'Day was placed when caught by the belt was the defendant's negligence, then the fact that O'Day himself might have been guilty of contributory negligence (which would prevent recovery in a suit brought by him) would not prevent a

recovery by the plaintiff. (*Eckert* v. *The Long Island Railroad Co.*, 43 N. Y. 502; *Spooner* v. *D., L. & W. R. R. Co.*, 115 id. 22; *Gibney* v. *State*, 137 id. 1.) These cases, recognizing the natural instinct in man to go to the rescue of his fellowman in a situation of imminent peril, hold that it is not negligence *per se* for one to voluntarily risk his own safety and life in attempting to rescue another from impending danger. As said in *Eckert* v. *The L. I. R. R. Co.* (*supra*): "The law has so high a regard for human life that it will not impute negligence to an effort to preserve it, unless made under such circumstances as to constitute rashness in the judgment of prudent persons." That case was one in which a child *non sui juris* went upon the tracks of the defendant company, and the plaintiff, seeing its danger from an approaching train which was being negligently run at the time, rushed to its rescue, and in so doing received the injuries complained of.

So in the *Spooner Case* (*supra*), the theory of plaintiff's contributory negligence was not permitted to prevail, it there appearing that she went upon the track to warn off other children who were in danger and in so doing caught her foot between the rail and plank crossing, and while in that position was injured. In the *Gibney Case* (*supra*) a child fell into a canal through an opening in a bridge which was negligently permitted by the defendant to remain in a defective state. The plaintiff's intestate (her husband) plunged into the canal to recover the child and in so doing was drowned. There, in answer to appellant's contention that there was no negligence towards her husband, the court say: "It is doubtless true that, except for the peril of the child occasioned by his falling through the bridge into the canal, there would have been no connection between the negligence of the State and the drowning of the father. But the peril to which the child was exposed was, as has been found, the result of the negligence of the State, and the peril to which the father exposed himself was the natural consequence of the situation. It would have been in contradiction of the most common facts in human experience if the father had not plunged into the canal to save his child."

These cases, therefore, support the view that if the negligence of the defendant had placed O'Day in the perilous position from which

he was rescued by Sann, and, actuated by the common impulse of humanity, Sann had gone to his rescue and in that effort had met his death, a recovery for such death would not be affected *per se* either by a consideration of contributory negligence or by the argument that there was no negligence towards Sann himself.   We fail to see, however, how a recovery can be sustained against the defendant upon the theory of negligence, when no evidence is presented from which the inference can be deduced that O'Day's position was in any way proximately caused by the defendant's negligence. However humane and meritorious the conduct of Sann in going to the rescue of O'Day, it is not a sufficient ground upon which to predicate liability as against the defendant for the resulting injuries, where the latter's negligence was in no way the proximate cause. As the evidence, therefore, failed to sustain the burden, which in this respect was placed upon the plaintiff, of showing that Sann was injured by attempting to rescue from a perilous position one who had been placed therein through the negligence of defendant, the disposition made by the trial judge was right, and the judgment appealed from must be affirmed, with costs.

VAN BRUNT, P. J., WILLIAMS, INGRAHAM and PARKER, JJ., concurred.

Judgment affirmed, with costs.