LEGAN & McCLURE LUMBER CO. v. FAIRCHILD.

(Division A. Nov. 4, 1929. Suggestion of Error Overruled December 2, 1929.)

[124 So. 336. No. 27952.]

Watkins, Watkins & Eager, of Jackson, and **E. M. Livingston** and **J. B. Gully**, both of Louisville, for appellant.

Reily & Parker, of Meridian, for appellee.

Currie & Currie, of Hattiesburg, for appellee.

Argued orally by **W. H. Watkins**, for appellant, and by **N. T. Currie** and **Marion W. Reily**, for appellee.

**Cook, J.**, delivered the opinion of the court.

The appellee, Mrs. Fairchild, instituted this suit in the circuit court of Winston county against the Legan & McClure Lumber Company, seeking to recover damages sustained by her on account of the death of her husband, Ivan Fairchild, which was alleged to have been caused by injuries received by him as a result of the negligence of the appellant, and, from a verdict and judgment for eight thousand dollars, this appeal was prosecuted.

The declaration, as finally amended, alleged, in substance, that on the 25th day of August, 1928, the appellant company was engaged in operating a sawmill and planing mill, with all necessary machinery thereto attached; that on that date her husband, Ivan Fairchild, was employed as an oiler in the planing mill; that by reason of his employment the said Ivan Fairchild was required to be at and about the machinery of the plant,

and, in case of any emergency, it was his duty to do and perform any act which appeared to be necessary and beneficial in preventing any injury or damage being done; that the appellant negligently, carelessly, and in wanton disregard of its duty in that respect, and of the safety of the deceased, furnished and provided an old, worn, weak, insufficient, and dangerous belt, which was used on the main drive wheel of the engine to propel the machinery in said plant; that the duties of Ivan Fairchild required him to be and work about the dangerous belt while the same was in operation; that while he was so engaged about his duties, the said belt, by reason of its old, worn, and dangerous condition, broke, and the pieces and parts thereof were thrown with great force against other machinery adjacent thereto.; that thereby the steam pipe and portions of the building were broken, and one of the large pulleys connected with the said engine was thereby caused to break and burst into pieces, and to be hurled in every direction with great force and violence; that by reason of the bursting of the said steam pipes boiling water and steam were thrown on and over the said Ivan Fairchild, and he was thereby scalded and burned to the extent that he died shortly thereafter, as a result of such injuries.

The appellant filed an application to require the appellee to make her declaration more specific in reference to where the decedent was at the time he received his injuries, and what duty in connection with his employment he was then performing, and in response the appellee filed a bill of particulars alleging the following: "At the time that the decedent was injured, it will be the contention of the plaintiff on the trial of this cause, and she will offer testimony to that effect, that at the time the decedent received his injuries, he was engaged in the duty of oiling the machinery of the defendant, and that he was engaged about his duties of going to the point

where the oil was kept by the defendant, in order to obtain oil to be used in oiling the machinery, and that the decedent was engaged in his duties of regulating the speed of, or regulating the operation of the engine of the defendant, and that the decedent was engaged about the duty of shutting off the steam from the engine in order to cause the stopping of operation of such engine at that time, and the decedent was engaged in the duty of causing the engine to cease running at a time when an emergency had arisen and it appeared that such was necessary in order to prevent damage and injury to defendant's property and defendant's employees.''

To the declaration as amended the appellant filed a plea of general issue, and gave notice thereunder of the following special matter: ''The plaintiff and her attorneys of record will take notice that at the trial of the above-entitled cause, the defendant will offer evidence to prove, and will prove, that the fatal injuries received by the decedent were caused proximately, solely and only by his voluntary, unnecessary careless and reckless exposure of himself to a known and obvious danger, not required or within the scope of his employment; that the decedent was not directed or required, nor was it within the scope of his employment, to attempt to turn the engine off or stop its movements, and that if any such duty rested upon him, there was a plain, easy and safe method of performing such duty.''

The material facts shown by the evidence are, in substance, that the plant of the appellant company consisted of a sawmill and planing mill which were about two hundred feet apart; that the steam which operated the machinery in both the planing mill and the sawmill was generated at a power plant about two hundred feet from the planing mill, and conveyed from the power plant to the planing mill through steam pipes which passed under the heavy floor of the engine room to the engine

which ran the machinery of the planing mill; that this engine was located in a room at the southwest corner of the planing mill, which projected several feet west of the planing mill proper; that this engine room was about fourteen feet by eighteen feet, and opened into what was known as the filing room at the east, and that there were two doors opening into this filing room, and an opening into the engine room on the north side; that in the west end of the engine room there was a window about three and one-half feet wide and two and one-half or three feet high, this window having been placed there for light and ventilation, and not for use as a means of entrance to the engine room; that inside the engine room there was located a Houston-Gambrell engine, which carried a large flywheel about fourteen feet in diameter; that the machinery of the planing mill was pulled by an eight-ply belt twenty-six inches wide and more than fifty feet long, which went around the flywheel of the engine, and then around a twenty-four inch pulley on the main line shaft; and that the main planing mill building was about ninety feet in length by sixty feet in width, and contained several planing machines, at which numerous employees were engaged.

There was also evidence to show that prior to August 1, 1928, Ivan Fairchild, the deceased, was employed to operate a resaw at the planing mill, but on account of sickness he was laid off from the first to the 25th of August, 1928, and when he went back to work on the last-mentioned date he was assigned lighter work, that of oiling the machinery in the planing mill; that the supply of oil which the decedent was required to use was stored in the filing room, which was adjacent to, and opened into, the engine room, but the decedent had no duty to perform in the engine room; that the engine room was in charge of an engineer whose duty it was to

oil and to stop and start the engine, and who was in complete charge thereof.

The evidence further shows that on August 25, 1928, a terrific explosion occurred in the engine room, and the testimony is conflicting as to what occurred in the few moments just preceding this explosion. However, as to the result of the explosion there is no dispute. It is shown that the large belt which ran over the flywheel was broken; that the large fourteen-foot flywheel was broken into many pieces, leaving only the hub and a few inches of the spokes thereof in place; that the entire roof of the engine room was torn away and scattered in every direction; that large pieces of the rim of the flywheel, each weighing several hundred pounds, were scattered promiscuously over the territory surrounding the engine room—one piece weighing several hundred pounds being thrown three hundred yards from the engine room, and another of like size being thrown onto the power plant two hundred feet away; that the two inch flooring over the steam pipes, and near the west window of the engine room, was broken, and the steam pipe thereunder was broken, thereby permitting the steam to discharge and fill the room; and that the engine was jammed and badly damaged.

There were several witnesses who testified that the first intimation they had of trouble in the engine room was the breaking of the belt, and that the sound of a breaking belt is unmistakable; that when an engine belt breaks, the usual, but not the invariable, result is to cause the engine to run away and wreck itself if it is not stopped; that when the belt broke the decedent was standing by planing machine No. 1, near the door to the engine room, having in his hands a can of oil, which he immediately set down; that he ran rapidly to the window at the west end of the engine room, and jumped into the room through this window; that inside this win-

dow, and about three or four feet south of it, was located a throttle by means of which the engine could be shut down; that immediately after the decedent entered the room through the window the explosion occurred in the room, and immediately thereafter steam began to escape and fill the room, and that the decedent then appeared at the window and was dragged out of the room by other employees. The proof shows that, with the exception of a small place on one hip, the entire body of the deceased was burned and scalded, and that as result of this injury he died several hours later. One of the witnesses testified that the decedent reached the throttle, and partially closed it before he was stopped by the steam; and another testified that after the accident the throttle was partially closed.

The appellant offered the testimony of several witnesses to the effect that at the time the decedent entered the window the explosion had already occurred, and the steam was escaping; that the decedent had no duty to perform in the engine room, and particularly in reference to starting and stopping the engine; and that from the place where the decedent was standing when the belt broke, to the throttle near the window, there was another and shorter route which he might have chosen, which passed through the filing room and down certain steps leading therefrom into the engine room and along by the engine to the throttle.

Other facts and items of testimony that we think have some bearing upon the assignments of error, and the issues presented for decisions, will be referred to in the discussion of the points urged by counsel in support of the assignments of error.

The appellant first contends that the court should have granted a peremptory instruction requested by it for the reason, first, that the proximate cause of the death of decedent was his own reckless and unnecessary ex-

posure to obvious danger; and, second, that the decedent had no duty to perform for the appellant in the engine room, and was going beyond the scope of his authority in entering the same.

The argument of counsel that it is manifest from the proof that the proximate cause of the decedent's death was his own reckless and unnecessary exposure to obvious danger proceeds upon the erroneous theory that the proof shows without dispute that at the time the deceased entered the engine room the belt had broken, the flywheel of the engine had exploded, the floor of the engine room had been broken and torn up, and the steam pipe had been broken, and the steam was escaping therefrom; in fact, that everything that could happen had already happened, and that, therefore, his act in entering the room, under the circumstances, was so rash and reckless that no reasonably prudent man would have undertaken it.

As already stated, there were several witnesses who testified that the deceased had entered the window near which the throttle was located before the flywheel exploded and the steam began to escape. The evidence shows that, at the first intimation of trouble in the engine room, the superintendent of the planing mill and the engineer, whose duty it was to attend the engine, both of whom were in the planing mill some distance from the engine room at the time the belt broke, as well as another employee besides the deceased, all ran toward the window which the deceased entered. The deceased reached the window and entered the room before either of the named employees reached the window, and while it is true that none of them entered, or attempted to enter, the room, and they testified that they would not have entered the room on account of the danger that was apparent to them, still, the fact that all of them rushed toward the window with the apparent intention of reach-

ing the throttle was a circumstance which the jury was entitled to consider in determining whether, by reason of the facts and circumstances existing at the time he entered the window, no reasonably prudent person would have gone into the room.

There was also testimony to the effect that when an engine belt breaks the engine "picks up and runs and if it is not shut down runs away and tears up things;" and that when such a belt breaks it is important to at once shut down the engine to prevent its being torn up; and that it is not unusual for an engine to be successfully shut down after the belt breaks.

There was also testimony that the deceased had, on various previous occasions, been seen to start and stop the engine; and while this testimony was not material as tending to establish that the decedent had any duties to perform with reference to starting and stopping the engine under ordinary or normal conditions, still, the fact that the decedent was familiar with the location and operation of the throttle which started and stopped the engine is a circumstance of importance in determining whether he acted as a reasonably prudent man would have acted in the emergency which then confronted him.

In numerous instructions the court submitted to the jury the determination of the question whether or not, under all the conditions and circumstances confronting the deceased at the time, his entering the room was an act so rash and reckless that a reasonably prudent person would not have done so, and instructed them that if they found, from the evidence, that a reasonably prudent person would not have entered the room under the conditions and circumstances shown, they must return a verdict for the defendant; and in so doing we are of the opinion that no error was committed.

The court also instructed the jury that, if they believed from the evidence that at the time the decedent

entered the engine room the flywheel had exploded and gone to pieces, and that decedent knew, or by the exercise of reasonable diligence could have ascertained, such fact, a verdict should be returned for the defendant. Upon this question there was a sharp conflict in the evidence, and it was proper to submit it to the jury for its decision.

The appellant also contends that the peremptory instruction to find for the defendant should have been granted, for the reason that there was no evidence from which the jury could find that the belt in question was old, worn, defective, and dangerous, or that the condition or emergency which brought about the decedent's injuries was due to any fault or negligence of the appellant.

Upon the question of whether or not the belt was old, worn, and defective, the evidence was likewise conflicting. Numerous witnesses testified that the belt in use upon the engine on this occasion was worn and defective; but appellant contends that it was shown by its evidence that the belt about which the witnesses were testifying was another and different belt from the one that broke. From the evidence of some of the witnesses this was left in some doubt, but the witness, J. T. Mouchette, positively identified the belt in question, and testified that it was old, worn, cracked, and defective, and that after he assisted in removing this belt from the supply house, and cutting it to the proper length, and placing it on the machinery, it was frequently necessary to stop the machinery and cut therefrom strips of the ply composing the belt, of various lengths, some three or four feet long. Upon the whole evidence, the jury was fully warranted in finding that the appellant was negligent in furnishing a worn, defective, and dangerous belt for the operation of this engine and machinery.

The appellant also advances the further contention that the peremptory instruction should have been granted for the reason that there was another and safer route that the decedent could have traveled in going to the throttle from the place where he was standing when the belt broke; and, also, because he could have had the power cut off by calling or notifying some one at the power plant, which was located about two hundred feet away. There was some testimony to the effect that, from the place where the decedent was standing to the said throttle, the route through the filing room and engine room was some few feet shorter than the route through the window; but it was also shown that in going to the throttle through the engine room the deceased would have had to pass along by, and in close proximity to, the engine, belt, and pulleys therein; and it reasonably appears from all the evidence that to have done so would have been much more hazardous than to travel the route outside the wall of the engine room to the window. Upon this point the court instructed the jury that it was decedent's duty to use reasonable care to select the most convenient and safest route in going to this throttle, and that, if they believed from the evidence that the entrance through the filing room to the engine would have been safer, and that decedent knowingly and voluntarily adopted a route which was less safe, and by reason thereof was injured, the verdict must be for the defendant.

This was all that the appellant was entitled to upon that point, and, in measuring what would be reasonable care under the circumstances confronting the deceased, the jury was properly instructed that a person would not be expected to exercise the same calm and careful judgment that would be required of a person who was not confronted with a sudden and unexpected event or emergency of a serious and dangerous nature.

The jury was also instructed that a verdict for appellant must be returned if they believed, from the evidence, that the deceased could have stopped the engine by cutting off the steam at the power house. The evidence shows that the power plant was two hundred feet away, and to have secured the desired result in that way it would have been necessary for decedent to go there, or in some way attract the attention of the employees in charge of the power plant. Under all the circumstances and conditions confronting the decedent, as shown by the evidence, the jury was fully warranted in finding that the failure of the decedent to attempt to have the steam shut off at the power plant, rather than to attempt to reach the engine throttle, was not such want of reasonable care on his part as would defeat recovery for his injuries and death. The fact that the steam was cut off at the power plant shortly after the explosion is of no importance as bearing upon this point. By its verdict the jury has found that when the decedent made his decision as to the proper course to pursue, only the belt had broken, and there is nothing to show or indicate that the attention of the employees so far away was attracted thereby; but it is self-evident that the terrific explosion, which wrecked the engine and engine room, attracted the attention of these employees, and caused them to shut off the power.

The court properly refused to grant the peremptory instruction requested by the appellant, and submitted the cause to the jury on the theory that it was within the scope of decedent's employment and duty to make a reasonable effort to prevent injury and damage to appellant's employees and property, in case of a sudden and unexpected emergency, and that the appellant would be liable for any injury sustained by decedent in any reasonable effort to prevent injury and damage to appellant's employees and property in any sudden emergency

which threatened immediate and imminent danger of such injury and damage, provided the emergency was caused by the negligence of appellant; or, in other words, that the scope of decedent's employment was enlarged if he went into the engine room for the purpose of preserving or protecting human life and property.

In criticism of the instructions submitting the cause to the jury upon this theory, the appellant first contends that there was no one in the engine room at the time the decedent entered it, and that the evidence shows that no human being was in real or imminent danger. With this contention we are unable to agree. The uncontroverted evidence is that the breaking of the belt on the flywheel of an engine will result in the engine rapidly increasing its speed to the point that it will wreck the engine if it is not in some way shut down; that a large number of men were employed in the planing mill, several of them being, at the time, within a few feet of the engine room and the racing engine. It is shown that, when the large flywheel exploded or broke into many pieces, the entire roof of the sixteen-foot by eighteen-foot building was blown or knocked off, and the debris scattered in all directions; that the large metal flywheel was broken in many pieces, which were hurled and scattered over the premises within a radius of three hundred yards, some of these pieces weighing two or three hundred pounds. Of course, it was possible for the employees who were working in close proximity to this engine room to escape injury, but it cannot be successfully contended that they were not in very great and imminent danger of losing their lives or suffering some great bodily injury.

We know of no decision of this court bearing directly upon the question as to whether or not the scope of authority of a servant will be enlarged for the purpose of saving human life, but the rule seems to be well estab-

lished in other jurisdictions that, when an employee has been injured in a reasonable effort to rescue himself or another from a peril created by the negligence of the employer, the latter will be liable in damages for the injury received, provided the rescuer has not acted rashly or exposed himself unnecessarily to danger. 18 R. C. L. 655; Norris v. Atlantic Coast Line R. R. Co., 152 N. C. 505, 67 S. E. 1017, 27 L. R. A. (N. S.) 1069 and notes; Wagner v. International Ry. Co., 232 N. Y. 176, 133 N. E. 437, 19 A. L. R. 1 and notes; Atlantic Coast Line R. R. Co. v. Jeffcoat, 214 Ala. 317, 107 So. 456; Eversole v. Wabash R. R. Co., 249 Mo. 523, 155 S. W. 419; Sann v. Johns Mfg. Co., 16 App. Div. 252, 44 N. Y. S. 641; Reynolds v. Great Northern Ry. Co., 159 Minn. 370, 199 N. W. 108.

This rule is founded upon reason and justice, as well as authority, and we approve it. Under the evidence the jury was warranted in reaching the conclusion that the dangerous condition with which the decedent and other employees of the appellant were confronted was the result of the appellant's negligence. That human lives were thereby exposed to real and imminent danger is apparent. In fact, in our opinion, no other reasonable conclusion could be reached under the evidence. The jury has so found, and under proper instructions it has found that the act of the decedent in attempting to reach the throttle for the purpose of shutting down the engine and avoiding the threatened peril was not so rash and reckless that a reasonably prudent person so situated would not have undertaken it, and we are of the opinion that the court committed no reversible error in the granting or refusal of instructions.

As to whether or not the rule that applies to a person who voluntarily exposes himself to danger in a reasonable effort to save human life will also apply in a case where a person exposes himself to danger merely to save

property, the authorities are not in accord, and it will not be necessary to here decide that question, for the reason that under the evidence in this record the conclusion that human life was in peril was inevitable.

There is authority for the view that one who, observing another in peril, voluntarily exposes himself to danger to save the life of the other is not guilty of contributory negligence, but as to this point it will not be necessary for us to now express an opinion, for the reason that the court instructed the jury that, in entering the window of the engine room, the decedent was guilty of contributory negligence which proximately contributed to his death, and directed that, in the event they returned a verdict for the appellee, the damage allowed should be reduced in proportion to the negligence attributable to the decedent.

The cause was submitted to the jury under instructions which fairly, and with reasonable accuracy, stated the law applicable to the facts and issues involved. The evidence amply supported the verdict of the jury, and, therefore, the cause will be affirmed.

Affirmed.