**USX CORPORATION,**
**Plaintiff–Appellee,**

v.

**B.J. TANENBAUM, Jr. and Ted Tan,**
**Defendants–Appellants.**

**No. 88–4809**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

April 4, 1989.
Rehearing Denied April 27, 1989.

Frank H. Spruiell, Jr., Comegys, Lawrence, Jones, Odom & Spruiell, Shreveport, La., for defendants-appellants.

W. Lake Hearne, T. Haller Jackson, Jr., Tucker, Jeter, Jackson & Hickman, Shreveport, La., for plaintiff-appellee.

Before POLITZ, KING and SMITH, Circuit Judges.

POLITZ, Circuit Judge:

The district court granted summary judgment to USX Corporation in its suit against B.J. Tanenbaum, Jr. as a surety for Dawn Drilling Company. Concluding that the district court erred in finding Tanenbaum bound *in solido* with Dawn Drilling and, as a consequence, not entitled to plead division,[1] we reverse and remand.

### Background

In return for the extension of credit to Dawn Drilling by USX Corporation, successor in name to the United States Steel Corporation, seven of Dawn Drilling's shareholders, including Tanenbaum, signed separate personal guaranty agreements[2] promising to pay any resulting indebtedness. The seven instruments are identical, stating in pertinent part:

1. In consideration of the giving of credit by the United States Steel Corporation, a Delaware Corporation, its successors and assigns, hereinafter designated as "USS", as and when it may deem proper to DAWN DRILLING

---

1. Division is the civil law concept of apportioning a debt among those equally liable for it.

2. The guaranties were signed by the stockholders on the following dates and at the following locations: Robert L. Lees, October 10, 1984, Shreveport, Louisiana; John A. Schlensker, October 14, 1984, Richardson, Texas; Thomas H. Chemielewski, October 17, 1984, Houston, Texas; A.P. Gates, October 17, 1984, Houston, Texas; B.J. Tanenbaum, Jr., October 17, 1984, Dumas, Arkansas; David M. Pritchard, October 22, 1984, Shreveport, Louisiana; H. Hodge Simms, Jr., October 23, 1984, Shreveport, Louisiana.

Tanenbaum's agreement also carries his signature as attorney-in-fact for Teddy Tan, another Dawn Drilling shareholder. It is undisputed that Tanenbaum lacked authority to sign for Tan.

COMPANY of SHREVEPORT, LOUISI-ANA, his, her, their, or its heirs, executors, administrators, successors and assigns, hereinafter designated as Principal, or the extension of any time of payment of any existing obligations of Principal to USS, and other valuable consideration, we, the undersigned (jointly and severally) hereinafter designated Guarantor(s), do(es) hereby unconditionally guarantee to USS, its successors and assigns, punctual payment at maturity of any and all indebtedness, including judgments, which Principal may now or hereafter owe to USS, whatever the nature of and however such indebtedness may be evidenced, and whether or however the same may be secured.

 \* \* \* \* \* \*

4.... The signature of or on behalf of any signatory party to this guaranty shall make the liability of such party absolute and unqualified and shall not be conditional upon the signing hereof by any other person, firm or corporation ...

 \* \* \* \* \* \*

6. In the event of any default by Principal, USS may institute one or more actions against Guarantor, or any one or more of them, as guarantors, cumulatively, concurrently, or consecutively, and invoke any legal or equitable remedies in said actions without being obligated first or at any time to institute suit against Principal or others liable upon or in connection with any obligations guaranteed hereunder or to foreclose or exhaust any lien, or other security, of any character whatever held by or available to USS and without affecting any such lien or security.

From April through July of 1985, USX sold Dawn Drilling oilfield equipment and supplies totalling $38,081.87. When payment was not made USX invoked diversity jurisdiction and filed suit against the seven guarantors in the Western District of Pennsylvania. Tanenbaum secured a transfer of venue to the Western District of Louisiana where USX proceeded against him alone.

In his response to the USX complaint, Tanenbaum claimed the benefit of division, as provided by article 3049 of the Louisiana Civil Code of 1870. USX moved for summary judgment, which the district court granted, finding that Tanenbaum had waived division by binding himself *in solido* with Dawn Drilling. Tanenbaum timely appealed.

### Analysis

 On review of the grant of a summary judgment we may affirm if, after examining the entire record we are convinced that there is no genuine dispute of a material fact and that the moving party is entitled to judgment as a matter of law. *Netto v. Amtrak,* 863 F.2d 1210 (5th Cir. 1989); *Estiverne v. Louisiana State Bar Assoc.,* 863 F.2d 371 (5th Cir.1989). Questions of fact are considered with deference to the non-moving party, *Reid v. State Farm Mut. Auto. Ins. Co.,* 784 F.2d 577 (5th Cir.1986), while questions of law are subject to *de novo* review. *Netto,* 863 F.2d at 1212. And, although we customarily defer to the district judge in a diversity case involving interpretation of the law of the state in which that judge sits, *NCH Corp. v. Broyles,* 749 F.2d 247, 253 n. 10 (5th Cir.1985); *Commonwealth Life Ins. Co. v. Neal,* 669 F.2d 300, 304 (5th Cir. 1982), we are "not bound by the district court's interpretation and can reverse the court if we believe the court has incorrectly applied the state's law." *Dean v. Dean,* 821 F.2d 279, 283 n. 4 (5th Cir.1987).

Tanenbaum concedes that by signing the guaranty agreement he became a surety for Dawn Drilling, thereby obligating himself to satisfy Dawn Drilling's debts in the event of its default. *See* La.Civ.Code art. 3035 (1870). But he maintains that because several other sureties guaranteed the company's debts he is entitled to the benefit of division, requiring USX to reduce its demand against him to the virile or proportionate share of the debt due by each surety. La.Civ.Code art. 3049 (1870).

We begin our analysis by considering the nature of suretyship under the Civil Code.

Marcel Planiol, a noted civil law authority, explains:

> Sureties resemble solidary co-debtors, in their relations with the principal debtor, and in their relations between themselves: there is no division between them, and each one of them can be sued before the debtor. However this is not true solidary, since the law accords to them the benefits of discussion and of division, benefits which are the negation of solidarity and which are refused to real solidary co-debtors.

2 M. Planiol, Treatise on the Civil Law No. 2351 (11th ed.1939). The division referred to by Planiol is granted by article 3049 of the Louisiana Civil Code of 1870, which provides:

> When several persons have become sureties[3] for the same debt, each of them is individually liable for the whole of the debt, in case of insolvency of any of them.
>
> Any one of them may however demand that the creditor should[4] divide his action by reducing his demand to the amount of the share and portion due by each surety, unless the sureties have renounced the benefit of division.

Planiol expounds:

> [The benefit of division] supposes the existence of several sureties. In such case, each one is held for the entire debt as if he were alone. This is a remarkable derogation from the general rule according to which an obligation contracted by several persons is divided, in principle, between the co-debtors. The sureties are therefore treated as if they were solidary debtors between themselves, which can only be explained by the Roman forms of suretyship and by the maintenance of ancient traditions. But this rigor of the law is tempered by the benefit of division, which permits sureties to be governed by the general rule, or close to it.

2 M. Planiol, Treatise on the Civil Law No. 2345 (footnote and citations omitted).

■ Although, as Planiol notes, the "rigor of the law is tempered by the benefit of division," the benefit is not absolute. It can be renounced by an express waiver. Slovenko, Suretyship, 39 Tu.L.Rev. 427, 452 (1965). USX's claim that paragraph 6 of the guaranty agreement constitutes such a waiver is without merit. That paragraph merely refers to USX's right to sue one or more of the guarantors without being obligated to proceed first against Dawn Drilling. Although this language may be interpreted to waive Tanenbaum's right to plead discussion,[5] it clearly does not renounce Tanenbaum's right to plead division.

The benefit of division also is waived if the surety binds himself *in solido* with the principal debtor, in which case "as between the creditor and the solidary surety, the obligations of the surety are governed by the rules of solidary obligors" and, hence, the "surety waives the plea[ ] of ... division." *Louisiana Bank & Trust Co. v. Boutte*, 309 So.2d 274, 278 (La.1975); *see also Hibernia Bank & Trust Co. v. Succession of Cancienne*, 140 La. 969, 74 So. 267, 272 (1917); La.Civ.Code art. 2094 (1870) ("The creditor of an obligation contracted *in solido* may apply to any one of the debtors he pleases, without the debtors' having a right to plead the benefit of division."). In determining whether a surety is bound *in solido* with the principal debtor, consideration must be given to article 2093 of the Civil Code, which provides that "[a]n obligation *in solido* is not presumed; it must be expressly stipulated." La.Civ. Code art. 2093 (1870). However, article 2093 "should not be so strictly construed as to require that such words as '*in solido*' or 'solidary' must appear in the contract in order to create solidary liability." *Flintkote Co. v. Thomas*, 223 So.2d 676, 679 (La.App.1969). Rather, a solidary obligation is created if the contract uses an

---

**3.** English translation of French text incomplete; should include "of the same debtor."

**4.** English translation of French text incomplete; should include "previously."

**5.** Discussion is a civil law concept which requires seizure of the principal debtor's property in satisfaction of the debt before the surety is called upon to make payment. Louisiana Civil Code art. 3045 (1870).

expression which clearly shows an intent to be bound *in solido.* *Id.*

■ In finding Tanenbaum and Dawn Drilling bound *in solido,* the district court apparently relied on the following language in paragraph 1 of the guaranty agreement:

> [W]e, the undersigned (*jointly and severally*) hereinafter designated Guarantor(s), do(es) hereby unconditionally guarantee to USS, its successors and assigns, punctual payment at maturity of any and all indebtedness, including judgments, which Principal may now or hereafter owe to USS.... (Emphasis supplied.)

While it is true that the term "jointly and severally" may serve to express an intent to be bound *in solido* under Louisiana law, *Flintkote,* 223 So.2d at 679–80, we agree with Tanenbaum that the term "jointly and severally" as used in paragraph 1 refers to the type of liability that exists between "we, the undersigned," meaning only those guarantors who were signatories to the agreement signed by Tanenbaum.[6] USX impliedly agrees for it does not contend on appeal that the joint-and-several clause in paragraph 1 bound Tanenbaum and Dawn Drilling *in solido.* Rather, USX maintains that "the tenor of the entire agreement expresses the intent of the parties that Tanenbaum was bound solidarily with Dawn." We are not persuaded. While the terms *"in solido"* or "jointly and severally" are not talismanic, Civil Code article 2093 requires something more than the "tenor" of the agreement to create a solidary obligation. We find no express stipulation in the guaranty agreement creating such an obligation between Tanenbaum and Dawn Drilling.

Our conclusion that Tanenbaum and Dawn Drilling are not bound *in solido* is buttressed by the decision in *Central Bank*

*v. Winn Farmers Co-operative,* 299 So.2d 442 (La.App.), *cert. denied,* 302 So.2d 310 (La.1974) (finding "[n]o error of law in the judgment"). The suretyship contract at issue in *Central Bank,* executed by five guarantors, stated in relevant part:

> FOR VALUE RECEIVED and in consideration of the extending at our request of the credit hereinafter mentioned ... the undersigned, *in solido,* for themselves, their heirs, executors and administrators, do hereby unconditionally guarantee to the CENTRAL SAVINGS BANK AND TRUST COMPANY ... full and prompt payment at maturity of any and all obligations ... which may now be due or which may hereafter become due ... from Winn Farmers Co-operative (hereinafter referred to as Borrower) to said Bank....
>
> This instrument is intended to be and shall be a continuing and unconditional guaranty agreement....
>
> \* \* \* \* \* \*
>
> Whenever any obligations of the Borrower or any renewals or extensions thereof shall become due and remain unpaid, the undersigned, *in solido,* do unconditionally agree to pay the amount due thereon to said Bank, its successors, endorsees, transferees or assigns, and it shall not be necessary for said Bank, in order to enforce such payment by the undersigned, first to institute suit or exhaust its remedies against the Borrower or others liable on such obligation, or to enforce its rights against any collateral which may have been pledged with the Bank to secure such obligations....

*Id.* at 444. The Louisiana appellate court rejected Central Bank's argument that the sureties who signed the contract, similar to the agreement signed by Tanenbaum, bound themselves *in solido* with the principal debtor. Although the court assigned

---

**6.** USX avers that Tanenbaum abandoned the argument that he is not bound *in solido* with Dawn Drilling when he failed to raise it before the district court. Tanenbaum concedes on appeal that he mistakenly stated in his motion opposing summary judgment that the guaranty agreement provides for solidary liability. Although we do not ordinarily consider an issue raised for the first time on appeal, an exception

exists when "a pure question of law is involved and a refusal to consider it would result in a miscarriage of justice." *Evans v. Triple R Welding & Oil Field Maintenance Corp.,* 472 F.2d 713, 716 (5th Cir.1973). Because the issue raised by Tanenbaum involves a pure question of Louisiana suretyship law, we find cause to depart from the general rule in this case and reach the merits of Tanenbaum's contention.

no reasons, we conclude that it was guided by the analysis which has instructed our disposition today.

■ Although the *Central Bank* court did not find that the sureties were bound *in solido* with the principal debtor, it nevertheless held that they waived the benefit of division by contracting in the suretyship agreement to be bound *in solido* with each other. *Id.* at 445; *see also Flintkote*, 223 So.2d at 680; *Edward B. Bruce Co. v. Lambour*, 123 La. 969, 49 So. 659 (1909); La.Civ.Code art. 2094 (1870). Thus, the third and final way a surety can waive the benefit of division is by becoming contractually bound *in solido* with the other sureties for the debt. In the case at bar, Tanenbaum and the other Dawn Drilling guarantors, unlike the sureties in *Central Bank*, executed separate agreements on separate dates and at separate locations. There was no simultaneous execution of counterparts, in fact or in stated intent. We perceive no compelling reason to conclude that they contracted to be bound *in solido*, and certainly no specific or express declaration that they did so.

■ The district court erred as a matter of law in finding that Tanenbaum was not entitled to the benefit of division.[7] Although Tanenbaum suggests that we amend the district court's judgment by reducing his liability to one-seventh of Dawn Drilling's debt to USX, that suggestion overlooks the possible insolvency of one or more of the other sureties. *See* La.Civ. Code art. 3049 (1870); *see also* 2 M. Planiol, Treatise on the Civil Law No. 2348. That requires factual findings not in this record. We therefore must remand for further proceedings.

The judgment of the district court is REVERSED and the matter is REMANDED for further proceedings consistent herewith.

---

**7.** Although not applicable in this case, we note that in 1987 the Louisiana Legislature revised the Civil Code articles on suretyship. Among the changes is the elimination of the benefits of division and discussion. La.Civ.Code art. 3045 (1987). A discussion of the principal changes made by the revision is provided in a preface to Civil Code art. 3035 (1987).