Leslie Lee LOWERY,
Plaintiff–Appellant,

v.

**ILLINOIS CENTRAL GULF
RAILROAD COMPANY,**
Defendant–Appellee.

No. 89–4101.

United States Court of Appeals,
Fifth Circuit.

Jan. 16, 1990.

Charles T. Ozier, George H. Ritter, Wise, Carter, Dhild, Caraway, Jackson, Miss., for defendant-appellee.

Before THORNBERRY, GARWOOD and DUHÉ, Circuit Judges.

THORNBERRY, Circuit Judge:

Plaintiff-appellant Leslie Lee Lowery (Lowery) appeals the district court's grant of summary judgment in favor of defendant-appellee Illinois Central Gulf Railroad Company (ICG) for personal injuries he sustained while on ICG's premises. For the reasons stated herein, we affirm in part, and reverse and remand in part.

### Facts and Procedural History

This suit arises out of personal injuries that Lowery suffered while present at the railroad yard of his former employer, ICG. Lowery was an employee of ICG until he was placed on furlough status in October of 1983. Following his layoff, Lowery received unemployment compensation until the end of his entitlement in 1985. During this time, Lowery was self-employed and worked various odd jobs, but at no time did he return to active employee status with ICG. Lowery maintained his contact with ICG employees, however, and like other furloughed employees, he would often stop by for personal visits or to inquire about job opportunities.

On August 5, 1986, Lowery went to ICG to talk to Wendell Forest, his former supervisor, about the possibility of cutting down some trees located on Forest's property. Neither Forest nor ICG had advance knowledge of this visit, and Lowery conceded that the purpose of his visit was completely personal. While walking from his car to the ICG office, Lowery testified that he heard a "chattering" noise coming from the wheels of a tank car that was part of a moving outbound train. He also testified that he detected a burning odor. Lowery's nine-year experience as a car inspector led him to believe that the hand brake on the

Stuart H. Smith, Jack W. Harang, Metairie, La., for plaintiff-appellant.

tank car was engaged. He testified that the hand brake would have remained engaged until someone released it or the car derailed. While the train was moving five or six miles per hour, Lowery decided to board the train so that he could release the brake, an action that he had done hundreds of times before. As he attempted to board the car, he slipped on the sill steps, fell underneath the car, and his foot was severed as the car ran over his leg. Lowery testified that the slip was caused by the presence of grease or oil on the sill steps and grab bar.

Lowery brought suit alleging that ICG was negligent in allowing the hand brake to be engaged and in maintaining the sill step and grab bar. He also alleged that he was an employee of ICG, and was thereby entitled to damages under the Federal Employers' Liability Act, 45 U.S.C. §§ 51–60 (FELA). Alternatively, Lowery brought Mississippi state law negligence claims, including an allegation that ICG breached its duty to him as an invitee or licensee. Lowery claimed $3,000,000 in damages.

After reviewing the evidence, the district court granted summary judgment in favor of ICG, finding as a matter of law that Lowery was not an employee within the meaning of FELA. The court also found that Lowery entered ICG's property as a licensee rather than an invitee, and that Lowery became a trespasser when he exceeded the scope of his license by trying to board the moving train. Finding no evidence that ICG had actual knowledge of his presence or that it acted willfully or wantonly in maintaining the tank car, the district court granted ICG's motion for summary judgment on the state law claims as well. Although Lowery also argued that he was entitled to recover under Mississippi's "rescue doctrine," the court did not address this issue.

Lowery brought this appeal. On review, we affirm the district court's grant of summary judgment on the FELA claim, and we affirm dismissal of the state law claim on the grounds that ICG did not breach its duty to Lowery as a licensee or trespasser. We reverse and remand, however, for re-consideration of Lowery's state law claim insofar as it alleges a negligence cause of action pursuant to Mississippi's rescue doctrine.

## Discussion

In reviewing a district court's grant of summary judgment, the standard of review at the appellate level remains the same as at the district court level. *Netto v. Amtrak,* 863 F.2d 1210, 1212 (5th Cir.1989). The pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, must demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id.;* Fed.R.Civ.P. 56(c). Under this standard, questions of fact are considered with deference to the nonmovant, while questions of law are subject to *de novo* review. *USX Corp. v. Tanenbaum,* 868 F.2d 1455, 1457 (5th Cir.1989). Although we customarily defer to the district judge in a diversity case involving interpretation of the law of the state in which that judge sits, we are "not bound by the district court's interpretation and can reverse the court if we believe the court has incorrectly applied the state's law." *Id.* (quoting *Dean v. Dean,* 821 F.2d 279, 283 n. 4 (5th Cir.1987).

## I. FELA's Employee Status Requirement

Lowery first objects to the district court's determination that he did not qualify as an employee within the meaning of FELA. Section 51 of FELA provides:

Every common carrier by railroad while engaging in [interstate] commerce ... shall be liable in damages to any person suffering injury *while he is employed by such carrier* in such commerce ... for such injury ... due to its negligence, in its cars, engines, appliances, ... or other equipment.

45 U.S.C. § 51 (emphasis added). To recover under FELA, a plaintiff must prove: (1) that defendant is a common carrier by railroad engaged in interstate commerce, (2) that the injured was employed by the defendant with duties furthering such com-

merce, (3) that the injuries were sustained while claimant was so employed, and (4) that the injuries were the result of the defendant's negligence. *Fowler v. Seaboard Coastline R.R.*, 638 F.2d 17, 19 (5th Cir. Unit B Feb. 1981). At issue here are the second and third elements. In order to qualify as an employee, section 51 provides:

> Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall in any way directly or closely and substantially, affect such commerce as set forth above shall, for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter.

FELA uses the words "employee" and "employed" in their ordinary and natural sense. *Robinson v. Baltimore & O.R.R.*, 237 U.S. 84, 94, 35 S.Ct. 491, 494, 59 L.Ed. 849 (1915). Generally, whether an injured worker was acting as an employee at the time of injury is a question of fact for the jury. *Lindsey v. Louisville & N.R.R.*, 775 F.2d 1322, 1324 (5th Cir.1985). Only if reasonable persons could not reach different conclusions on whether a claimant was an employee of the railroad at the time of his injury may the question be taken from the jury. *Baker v. Texas & P. Ry.*, 359 U.S. 227, 228, 79 S.Ct. 664, 665, 3 L.Ed.2d 756 (1959).

■ Reviewing all of the facts before us, we agree with the district court that no reasonable juror could find that Lowery was an employee of ICG at the time of his injury. Lowery cites evidence that furloughed employees often visited ICG to inquire about employment opportunities, and that some ICG employees treated furloughed employees like regular employees. Nevertheless, it is undisputed that as of 1983, Lowery has been laid off work. Since then, he has neither been called back to work nor has he collected any wages from ICG. Lowery has also applied for and received unemployment compensation, and his presence at the railroad yard on the date of his injury was neither requested by nor known to ICG. In addition, Lowery

conceded that the purpose of his visit was not business related but purely personal. To consider Lowery an employee under these circumstances stretches the term "employee" well beyond its usual meaning.

■ Furthermore, even assuming that Lowery was "employed," there is no indication that Lowery had any duties furthering interstate commerce, because as a furloughed employee, Lowery simply had no duties at all. Lowery argues that if an emergency arose, he would have a "duty" as a furloughed employee to respond to ICG's call and return back to work. Perhaps. But *until* Lowery does return to work (assuming of course that he chooses to do so), he has no duties or obligations as an employee. The mere expectation that upon being recalled to work plaintiff will become an employee with duties affecting interstate commerce is not sufficient to bring the case within FELA. Therefore, we affirm the district court grant of summary judgment in favor of ICG on Lowery's FELA claim.

## II. Invitee, Licensee, or Trespasser?

Lowery also appeals the district court's rejection of his state law claim that ICG breached its duty to him as either an invitee or licensee on its property. Lowery presented evidence that he and other furloughed employees were expected to visit the railroad yard in the event that work became available, and that ICG knew of and welcomed their presence. Thus, he argues that he was an invitee, or alternatively, a licensee who was injured due to ICG's active negligence. The district court found that Lowery was a licensee when he entered ICG's property, but that he became a trespasser when he exceeded the scope of his license by boarding the train. Because there was no evidence of willful or wanton injury, the district court granted summary judgment in favor of ICG. We agree with the district court.

■ In *Hoffman v. Planters Gin Co.*, 358 So.2d 1008 (Miss.1978), the Mississippi Supreme Court explained the distinction between invitees, licensees, and trespassers:

As to status, an invitee is a person who goes upon the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual advantage. A licensee is one who enters upon the property of another for his own convenience, pleasure or benefit pursuant to the license or implied permission of the owner whereas a trespasser is one who enters upon another's premises without license, invitation or other right.

*Id.* at 1011 (citations omitted); *see also Payne v. Rain Forest Nurseries, Inc.,* 540 So.2d 35, 37 (Miss.1989). If Lowery was an invitee, ICG had a duty to maintain the premises in a reasonably safe condition for use in a manner consistent with the invitation, or at least a duty not to lead the invitee into a dangerous trap or expose him to unreasonable risk. *E.g., Hoffman,* 358 So.2d at 1012. This ordinary and reasonable care standard also applies against a landowner whose (1) active negligence subjects a licensee to unusual danger (2) when the presence of the licensee is known. *E.g., Archie v. Illinois Cent. G.R.R.,* 709 F.2d 287, 289 (5th Cir.1983) (applying Mississippi law); *Hughes v. Star Homes, Inc.,* 379 So.2d 301, 304 (Miss.1980). Otherwise, if Lowery was a licensee or a trespasser, and ICG was unaware of his presence, the only duty owed by ICG was not to willfully or wantonly injure him—a standard of care involving a conscious disregard of a known and serious danger. *E.g., Payne,* 540 So.2d at 37; *Maxwell v. Illinois Cent. G.R.R.,* 513 So.2d 901, 905 (Miss.1987); *Hoffman,* 358 So.2d at 1013.

Given the fact that Lowery and other furloughed employees were frequently present at the railroad yard, the evidence indicates that Lowery was there with ICG's implied permission. Lowery contends that he was an invitee, however, since he and other furloughed employees would often be present to inquire about employment and would sometimes lend a hand and help the railroad.[1] Nevertheless, although Lowery may have at other times entered ICG's property for the mutual benefit of both parties, when he entered the premises on the day of the injury, it is clear that he was doing so solely for his own benefit. Lowery testified that he was not there to inquire about work, but only to get Forest's permission to cut down trees on Forest's private property so that he could have the wood. Furthermore, there is no evidence that Forest or any other ICG employee requested or had any knowledge of his presence on the property. Therefore, because the railroad did not derive any mutual benefit from this visit, Lowery was at most a licensee, and because his presence was unknown, ICG only had a duty to refrain from willfully or wantonly injuring him. *Payne,* 540 So.2d at 38; *see also Lucas v. Buddy Jones Ford Lincoln Mercury, Inc.,* 518 So.2d 646, 647–48 (Miss. 1988) (affirming grant of summary judgment finding that plaintiff, who at other times was an invitee, was licensee on the date in question, because plaintiff entered premises for personal reasons and had no business purpose with landowner).

In addition, even if one accepted the argument that Lowery was an invitee, the district court properly found that he exceeded the scope of his invitation and became a trespasser when he boarded the moving train. Under Mississippi law, although the injured party may have entered the premises as an invitee, he may lose this status and acquire that of a trespasser if he proceeds into an area not included within the scope or purpose of the invitation. *See, e.g., Payne,* 540 So.2d at 38; *Braswell v. Economic Supply Co.,* 281 So.2d 669, 672–73 (Miss.1973); *Selby v. McWilliams Realty Corp.,* 246 Miss. 568, 151 So.2d 596,

---

**1.** Lowery introduced affidavits and testimony that ICG knew of and welcomed furloughed employees to enter the property and inquire about employment opportunities. The district court reviewed the various testimony and affidavits of three former employees and an expert witness, but found no indication of an express or implied invitation by ICG. The court rejected the expert's testimony and affidavit on the grounds that the expert had no personal knowledge of ICG policies—a ruling that is not manifestly erroneous. *Washington v. Armstrong World Indus., Inc.,* 839 F.2d 1121, 1123 (5th Cir.1988). Similarly, the court found that the former employees cited no facts or evidence of any express or implied invitation by ICG.

597 (1963). Although Lowery claims that ICG "invited" furloughed employees to be on the premises, there is no evidence that scope of this "invitation" ever extended so far as to invite or permit furloughed employees to board moving trains. Despite his good intentions, when Lowery decided to board the train, he exceeded the scope and purpose of allowing furloughed employees on the property. Thus, given the absence of willful and wanton conduct by ICG, summary judgment was proper.

## III. The Rescue Doctrine

█ Finally, Lowery contends the district court erred by granting summary judgment in favor of ICG and effectively dismissing his claim pursuant to Mississippi's "rescue doctrine." Under this common law doctrine, a defendant can be held liable for a rescuer's proximately-caused injuries if the defendant negligently created a dangerous situation that invited action by the rescuer to avert property damage or personal injury. See W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 44, at 307–09 (5th ed. 1984) [hereinafter *Prosser and Keeton on Torts*].

The Mississippi Supreme Court adopted the rescue doctrine in *Legan & McClure Lumber Co. v. Fairchild,* 155 Miss. 271, 124 So. 336 (1929). *Fairchild* involved a worker in a sawmill who was killed while trying to prevent a steam engine from exploding. The employer argued that it could not be liable because entering the engine room was beyond the scope of the employee's duties. The Mississippi Supreme Court disagreed. It held that because the employer's negligence created a dangerous condition, the employer was liable for its employee's injuries sustained while the employee attempted to prevent injury to the employer's property or to third persons. *Fairchild,* 124 So. at 340; *accord Ingram v. Hyster Sales & Serv., Inc.,* 231 So.2d 500, 502–03 (Miss.1970).

█ Mississippi has applied the rescue doctrine outside of the employment context as well. In *Superior Oil Co. v. Richmond,* 172 Miss. 407, 159 So. 850 (1935),

the defendant railroad had negligently allowed a tank car filled with gasoline to overflow. The gasoline caught on fire, and the plaintiff, an employee of a nearby plant, came over to help put out the fire. The plaintiff was killed when the tank car exploded. In holding the railroad liable, the court explained:

> If the escaping gasoline threatened harm to persons or property, the natural and ordinary thing for one to do, under whose observation it came, would be to attempt to prevent the threatened harm, and if his acts in so doing are not extraordinarily negligent, his intervention does not supersede the negligence which brought about the necessity for his intervention, although the intervener himself might be charged with contributory negligence.... In order to supersede the original negligence, the intervener's conduct must be so extraordinary and dangerous to himself or to others that the person guilty of the original negligence could not "have realized that a third person might so act." Whether the intervener's conduct was of such character is for the determination of the jury....

*Superior Oil,* 159 So. at 852–53 (citation omitted) (quoting Restatement (Second) Torts § 447); *see also Prosser and Keeton on Torts* § 44, at 308 (noting that "the great majority of the courts" apply the rescue doctrine "to one who tries to rescue the property of another, even when under no duty to do so, and even though the property involved is that of the defendant") (footnotes omitted). Thus, under the Mississippi rescue doctrine, an employment or other type of relationship is not necessary, and any contributory negligence reduces but does not bar recovery.

█ Therefore, in order for Lowery to recover under Mississippi's rescue doctrine, Lowery must show:

(1) The condition of the locked hand brake on the car resulted from defendant's negligence;

(2) this negligence exposed the employer's property and unidentified third parties to danger; and

(3) this emergency situation led to Lowery's rescue attempt and proximately caused his injuries.

The district court did not address this theory of recovery in its opinion,[2] and the main issue here is whether Lowery raised this theory before the trial court or presented any evidence to support such a claim. At the outset, we note that summary judgment is disfavored in negligence cases, *e.g.*, *Gross v. Southern Ry.*, 414 F.2d 292, 296–97 (5th Cir.1969), including those negligence cases invoking the rescue doctrine, *see Williams v. Chick*, 373 F.2d 330, 331–32 (8th Cir.1967).

ICG argues that Lowery presented no evidence that an engaged hand brake created danger or threatened harm to property or persons. Clearly neither party pursued this issue very thoroughly during discovery. Nevertheless, Lowery at least implied in his deposition that the engaged hand brake was hazardous when he testified that the hand brake would have remained engaged until someone released it or the train derailed. Record at 267. We also note that it is difficult to imagine why Lowery would risk jumping on a moving train if he did not believe that the hand brake created a hazardous situation.

▮▮▮▮ In addition, Lowery's expert E. Earl Seals testified that an engaged hand brake on an outgoing train was a dangerous condition that could lead to serious problems. He noted that the wheels could become locked and develop flat spots, and that this condition could lead to a derailment. Record at 380. Seals also filed an affidavit stating that releasing the hand brake was necessary in order to prevent serious property damage or personal injury to other employees or members of the public.[3] Record at 312. Construed in favor of the nonmovant, we find that this evidence is sufficient to create a jury question as to whether the engaged hand brake was a danger to property or persons.

▮▮▮▮ Lowery also raised and argued the rescue doctrine before the district court. First, Lowery alleged in his complaint that the accident resulted solely from ICG's negligence. We note that the rescue doctrine is nothing more than a negligence doctrine addressing the problem of proximate causation. *See* Restatement (Second) of Torts §§ 443, 445; *Prosser and Keeton on Torts* § 44 (discussing rescue doctrine in context of intervening and proximate causation). Second, in his answer to defendant's itemization of facts supporting summary judgment, Lowery denied that there was no duty or permission to board the train to the extent that "he was protected by the rescue doctrine." Record at 308. Finally, Lowery presented his rescue doctrine claim in his motion opposing summary judgment, in which he discussed the *Fairchild* case. Taken together, we find that the record demonstrates that this theory of recovery was properly brought to the attention of ICG and the district court. Therefore, we hold that the district court erred in effectively dismissing this claim by granting summary judgment, and we remand this issue for further consideration.

---

**2.** The district court did state that

[t]he Court is sympathetic to the Plaintiff's claim. It believes that Plaintiff acted from a spirit of public interest in attempting to stop the boxcar, even though there is no evidence that the car actually posed a danger to others.

ICG argues that this passage indicates that the court considered and rejected the rescue doctrine claim. We express doubt, however, that the district court was referring to plaintiff's rescue doctrine claim, and in any case find that there was evidence that the engaged hand brake on the car presented danger to ICG's property and to third persons.

**3.** Although the district court found that Seals' testimony with regard to Lowery's other state law claim was unreliable since it was not supported by actual knowledge, the court did not determine whether Seals' railroad experience provided sufficient background and knowledge as to this matter. We note that Seals' railroad experience was in excess of ten years and included time acting as a train master, an operating rules examiner, a manager of railroad car repair control, and an inspector of railroad equipment. Record at 314–15. Seals has also appeared as a railroad expert in several other cases. Although he has not been involved in the railroad business since 1973, this experience is sufficient enough to qualify Seals as an expert on hand brake operations.

### Conclusion

Because Lowery was not an employee with duties furthering interstate commerce, we hold that the district court properly granted summary judgment in favor of ICG on Lowery's FELA claim. We also agree that Lowery was a licensee whose presence was unknown, and that he became a trespasser upon trying to board the moving train. Because there is no evidence of willful and wanton conduct, summary judgment in favor of ICG was proper. Finally, we find that there is sufficient evidence to support Lowery's claim under Mississippi's rescue doctrine, and that this theory of recovery was brought to the district court's attention. Thus, summary judgment was inappropriate and we remand this issue for further rulings on the basis of this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.