United States Court of Appeals
Fifth Circuit

**F I L E D**

September 9, 2003

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 02-21253
_____

Administaff, Inc. and Administaff of Texas, Inc.,

Plaintiffs- Counter Defendants-Appellants,

versus

American International Speciality Lines Insurance Company,

Defendant-Counter Claimant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas
District Court No. H-02-CV-1964

_____

Before WIENER, CLEMENT and PRADO, Circuit Judges.[1]

PRADO, Circuit Judge.

This appeal arises from a dispute between an insured and its insurer. The appellant, Administaff, Inc. and its subsidiary, Administaff of Texas, Inc., filed a lawsuit in district court seeking declaratory judgment that Administaff's insurer was bound to defend it in a lawsuit.[2] Both parties, the appellant-insured

_____

[1]Pursuant to 5th Cir. R. 47.5, this Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

[2]To simplify the language of this opinion, the Court will refer to Administaff, Inc. and its subsidiary, Administaff of Texas, Inc., as a single plaintiff-appellant.

1

and the appellee-insurer, moved for summary judgment. The district court granted summary judgment in favor of the insurer and stated in its judgment that the insurer did not have a duty to defend the insured nor a duty to indemnify. In response, the insured filed a notice of appeal.

## Background Facts

The appellant is a professional employer organization that provides personnel management and human resources services to small and medium sized companies. The appellant purchased insurance coverage from the appellee, American International Speciality Lines Insurance. The policy included an obligation to defend the insured in lawsuits. During the coverage period, Aetna Life Insurance Company (Aetna) named the appellant as a defendant in a counterclaim. The counterclaim arose from a dispute between the appellant and Aetna in the provision of health insurance to Administaff employees. The appellant notified its insurer about the counterclaim, and the insurer refused to defend the appellant because it maintained the policy did not cover the claim. The appellant sought relief in district court, but lost on summary judgment. On appeal, the appellant maintains the district court erred by granting summary judgment in favor of the appellee.

## Standard of Review

In reviewing a district court's grant of summary judgment,

this Court uses the same standard of review used by the district court. *See Lowery v. Ill. Cent. Gulf R. Co.*, 891 F.2d 1187, 1190 (5th Cir. 1990). "The pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, must demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Under this standard, questions of fact are considered with deference to the nonmovant, while questions of law are subject to *de novo* review." *Lowery*, 891 F.2d at 1190 (citations omitted). Although this Court ordinarily defers to the district court in a diversity case like this one requiring interpretation of state law, the Court is not bound by the district court's interpretation and can reverse the court if the district court incorrectly applied state law. *See id.*

## Whether the District Court Erred

In its first issue, the appellant argues that the district court erred in determining the appellee had no duty to defend the appellant in its defense of Aetna's counterclaim. The appellant maintains that the district court not only rejected the clear, unequivocal language of the policy, but also rejected Texas law in interpreting the policy limits. The appellant is correct.

Under Texas law, the question of insurance coverage is determined under the "eight corners" rule. *See Guaranty Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998).

3

Under this rule, the "court compares the four corners of the insurance policy with the four corners of the plaintiff's pleading to determine whether any claim alleged by the pleading is potentially within the policy coverage." *Guaranty Nat'l Ins. Co.*, 143 F.3d at 193. The district court makes this comparison without reference to the truth or falsity of the plaintiff's allegations. *See Guaranty Nat'l Ins. Co.*, 143 F.3d at 193. "[I]f the allegations in the complaint will allow the plaintiff to recover on a theory within the scope of the insurance policy, there is potential liability against which the insurer is obligated to defend." *Sentry Ins. v. R.J. Weber Co., Inc.*, 2 F.3d 554, 556 (5th Cir. 1993).

The Insurance Policy. In the instant case, the four corners of the insurance policy provide:

ERRORS AND OMISSIONS.

To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as Damages resulting from any claim or claims first made against the Insured and reported to the Company during the Policy Period for any *Wrongful Act* of the Insured or of any other person for whose actions the Insured is legally responsible, but only if such Wrongful Act first occurs during the Policy Period and *solely in the conduct of the Insured's Profession* as stated in Item 6 of the Declarations.

Policy at ¶ 1 (emphasis added). The italicized language is important in interpreting the contract.

The policy also provides that the insurer will "[d]efend any

action or suit brought against the Insured alleging a Wrongful Act, even if such action is groundless, false or fraudulent . . . ." *Id*. at ¶ 2(a). The policy defines Wrongful Act as "any actual or alleged breach of duty, neglect, error, misstatement, misleading statement or omission *solely in the conduct of the Insured's Profession* as stated in Item 6 of the Declarations." Policy at Definition #3 (emphasis added). Item 6 defines "Insured's Profession" as:

> Soley [sic] in the performance of recruiting and selection, outplacement services, employer liability management and assistance, related government and compliance, owner support, performance management, training and development, *benefit management*, HR consulting, permanent placement services, insurance agent and broker services, risk management services, employer liability management services and accounting and book keeping services including related data processing services for others for a fee.

Policy at Item 6 (emphasis added). Under this language, the insurer has a duty to defend the insured if Aetna's counterclaim alleged a Wrongful Act that occurred in the conduct of the Insured's Profession.

Aetna's counterclaim. Aetna's counterclaim alleged ERISA violations, breach of contract and misrepresentation, and asked for declaratory judgment. The misrepresentation cause of action lies at the center of the parties' dispute about whether a duty of defend exists. The four corners of that allegation claim:

> Administaff, through its authorized agents and vice principals, made material misrepresentations or failed

5

to disclose material information when there was a duty to speak. . . . Administaff failed to exercise due care and/or acted recklessly or with knowledge that its statements were false.

Counterclaim at ¶ 37 & 38. Although the parties do not seriously dispute whether this language alleges a Wrongful Act, the appellee-insurer maintains these allegations did not occur in the conduct of the Insured's Profession. Instead, the appellee-insurer characterizes the alleged acts and omissions as management tasks of a nonprofessional nature and not professional services on behalf of clients.

Whether the Wrongful Act Occurred in the Conduct of the Insured's Profession. Although the district court did not prepare a written legal analysis in support of its judgment, the transcript of the hearing conducted on the motion for summary judgment indicates the district court analogized the insurance policy to a professional liability policy for doctors and lawyers. The district court reasoned that because a doctor's or lawyer's malpractice policy was designed to protect the doctor or lawyer from lawsuits by patients or clients, the appellant's policy was designed to protect the appellant from lawsuits by its employee-clients.

The district court focused on the title of the policy, "Miscellaneous Professional Liability Policy." The district court reasoned that "the nature of even a miscellaneous professional liability policy, is protecting the consumer," and

6

concluded accordingly that the policy is "an Administaff-to-consumer policy because that's what [a] professional liability policy covers." The district court explained that

> if you say you're going to go out and get a professional liability policy, you're talking about people who are hurt by your practicing your profession, not your creditors, not those whom you trespass upon on the way to work; and this is on the way to providing the service. . . . But regardless of the label we stick on it, what Administaff does in acquiring things and to third parties is not covered[,] just as a lawyer who hires a secretary away from the law office next door would not be covered under his professional liability policy because they are not essential to the provision of services.

Notably, the district court did not address the language of the policy quoted above. Had the district court considered that language, it should have first concluded that Aetna had alleged a Wrongful Act. The language of the Aetna allegations almost mirrors the policy's definition of Wrongful Act. The policy defines Wrongful Act, in part, as "any actual or alleged . . . misstatement, misleading statement or omission," and Aetna alleged "material misrepresentations" and "failure to disclose material information when there was a duty to speak." Thus, a comparison of the four corners of the contract with the four corners of the factual allegations of the counterclaim indicates a Wrongful Act under the policy. Because Aetna alleged a Wrongful Act, the next question is whether the Wrongful Act occurred in the conduct of the Insured's Profession.

Under the policy, a covered act must have occurred "*solely*

7

*in the conduct of the Insured's Profession."* Understandably, the district court may not have fully understood what functions constituted the Insured's Profession. That question created an ambiguity in the contract. At one point, the district judge recognized the ambiguity and ordered the appellant to "file a one-page factual declaration of its business" in an order directing the appellant to move for summary judgment. The one-page declaration of Administaff's business includes "providing and managing all benefits, including health and dental insurance." The declaration went on to detail the functions required to provide these services.[3] Notably, Item 6 of the policy defines the Insured's Profession, in part, as "benefit management."

Under Texas law, ambiguity such as the ambiguity created by the "*solely in the conduct of the Insured's Profession*" language must be resolved in favor of the insured. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991); *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984) (stating that contracts are to be interpreted to avoid exclusion of coverage). As a result, the question of

---

[3]The declaration provided: "The management functions related to the Health Plan include but are not limited to: implementing, monitoring and maintaining an appropriate funding arrangement with the health carrier; negotiating, reviewing and implementing insurance rates on an on-going basis; and monitoring the financial status of the funding arrangement with the carrier."

whether the Wrongful Act occurred in the conduct of the Insured's Profession should have been answered "yes." The next step would have been to consider the appellee's arguments that an exclusion applied. The district court, however, did not reach the exclusions because it read language into the policy that does not exist.

The district court read the policy as if the duty to defend applied only to claims made by consumers. Nothing in the policy indicates the policy covers only Wrongful Acts alleged by Administaff's client-consumers. "An intent to exclude coverage must be expressed in clear and unambiguous language." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 811 S.W.2d at 555. Had the appellee-insurer wanted to limit its duty to defend to claims brought by consumers, it was incumbent upon the insurer to expressly and clearly state the exclusion in the language of the policy. *See id.* Because the appellee-insurer did not draft the contract to expressly and clearly cover only claims brought by consumers, it cannot complain now.

In its second issue, the appellant contends the district court erred by finding the contract ambiguous and construing the policy in contravention of Texas state law. Although the appellee maintains the district court did not find the contract was ambiguous, the transcript of the hearing shows that the district court read the contract as having more than one reading.

9

At one point during the hearing on the motion for summary judgment, the district court considered the appellant's position that the duty to defend was not limited to claims brought by consumers and stated "I'm hesitant to say that your position is unreasonable." The district court also recognized that "there are alternative interpretations" of the policy. Ultimately, however, the district court concluded that "on its face, th[e] policy has one compelling reading, and that is, to cover the consumers of the services, not the vendors of the parts of the services." Without a written order clarifying the court's analysis, it is difficult to ascertain whether the district court ultimately determined the contract was ambiguous. Albeit unclear, the district court treated the contract as if it were *un*ambiguous–that is, the district court determined the face of the contract indicated that it did not apply to claims brought by non-clients and non-consumers. This Court, however, need not determine this issue because the district court erred by failing to interpret the contract language.

### Whether Remand Is Appropriate

When the district court errs in its reason for granting summary judgment, this Court can affirm the summary judgment where other adequate grounds for granting summary judgment exist. *See Thompson v. Ga. Pacific Corp.*, 993 F.2d 1166, 1167-68 (5th Cir. 1993). In this appeal, however, remand is appropriate

10

because the district court did not consider whether a policy exclusion applied.  The district court did not consider the exclusions because it determined the policy did not apply to claims brought by non-clients and non-consumers. As a result, remand is appropriate for consideration of the exclusions.  On remand, the district court is bound under Texas law to strictly construe exclusions against the insurer and in favor of the insured.  *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 811 S.W.2d at 555.

Remand is also appropriate for reconsideration of the appellee-insured's argument that it had no duty to indemnify. Unlike the duty to defend, the "duty to indemnify is triggered by the actual facts establishing liability in the underlying suit." *See Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821 (Tex. 1997).  The district court, however, did not reach those facts.  Instead, the district court based its determination on its finding that the appellee-insurer had no duty to defend.

## Conclusion

Having sustained the appellant's first argument that the district court erred in granting summary judgment in favor of the appellee, the Court REVERSES the district court's summary judgment and REMANDS the case to the district court for further proceedings consistent with this opinion.

REVERSED and REMANDED.

11