**Don DEAN, Plaintiff-Appellee,**

v.

**Jimmy DEAN, Defendant-Appellant.**

No. 86–1261.

United States Court of Appeals,
Fifth Circuit.

July 13, 1987.

R. Brent Cooper, Michael W. Huddleston, Dallas, Tex., for defendant-appellant.

Martha J. Hardwick, W. Ralph Canada, Christopher H. Rentzel, Dallas, Tex., for plaintiff-appellee.

Before EDWARDS\*, RUBIN and HILL, Circuit Judges.

\* Circuit Judge of the Sixth Circuit, sitting by  designation.

ROBERT MADDEN HILL, Circuit Judge:

In this appeal we are faced with the issue of whether Texas law permits the recovery of damages for mental anguish that results from the breach of a settlement agreement. We hold that it does not.

## I.

Jimmy Dean and his brother, Don Dean, have been feuding for a number of years. Their animus originates from the time when they were co-adventurers in the Jimmy Dean Meat Company, Inc. Jimmy, a former entertainer, provided the money to open the operation and gave Don an interest in the company. Don served for several years as the president of the company and, as such, took primary responsibility for running its day-to-day operations. Jimmy and Don both sat on the company's board of directors.

The brothers strongly disagree about the true source of their conflict. Jimmy contends that he was forced to take control of the company because Don's mismanagement and dishonest dealings were turning a prosperous enterprise with excellent growth potential into a dying proposition with which other companies were growing increasingly unwilling to bargain. Don asserts that the company was profitable and growing under his management and that Jimmy's only real motive for forcing Don out of his job was the fact that Jimmy's entertainment career was floundering and

Jimmy's inability to accept receding importance. Whatever the true reason for the move, it is agreed that in March 1977 Jimmy seized control of the company from Don, and Don sold his interest in the company back to the corporation.

Having taken control of the company, Jimmy then began a campaign of disparaging its former management in general, and Don in particular. His comments were made to people in the meat marketing business and to national audiences watching television or listening to the radio. Jimmy contends that he found such action necessary to regain the confidence of business people whom Don had alienated and to convince them that problems that had plagued the company had been corrected. Don maintains that the attacks he endured were simply another part of Jimmy's efforts to justify his action and to tear down his brother so that he could magnify his own importance. Because Don had opened another meat business upon being removed from the Jimmy Dean Meat Company, he felt that he could not afford to have his reputation as a businessman tarnished. Therefore, in 1978 he filed a libel and slander suit against Jimmy seeking $9 million in damages.

That suit was settled in February 1980 in an agreement which awarded Don $148,000 for damage to his reputation and provided that both Don and Jimmy were prohibited from making or authorizing, directly or indirectly, statements about the other after the date of the settlement.[1]

---

1. Paragraph 4 of the settlement agreement controls this part of the agreement. It provides: First Party and Second Party do hereby mutually agree and bind themselves and their respective agents, representatives, and employees to entirely refrain from making either public or private statements about the other party, at all times subsequent to the execution of this Agreement. In this connection, the parties mutually agree that neither of them will directly or indirectly initiate comments or statements, whether public or private in nature, to any third persons, wherein one party makes, or induces or encourages another person or persons to make, any statements whatever about the other party, whether derogatory in nature or not, and whether referring to the other party as brother, relative, associate, partner, fellow shareholder, em-

ployee, officer or manager, or otherwise, as to any past, present or future business enterprise or entity; or to refer to the other party's activities, conduct, personal or business integrity, honesty, dishonesty, ability, lack of ability, or responsibility in any of the preceding capacities; or in ascribing blame or fault as to any past acts, past financial condition or operations and any future financial condition and operations of The Jimmy Dean Meat Company and any of its affiliates. The parties further mutually agree that, in the event at any time in the future, any direct or indirect inquiry is made by a third person to one party hereto about the past, present or future conduct, character, ability, reputation, or honesty of the other party, *or as to the terms of this settlement*, then the party to whom the inquiry is made can only refer, verbatim, to the

On December 26, 1982, *The Dallas Morning News* published a feature article about Jimmy which made references to Don that violated the terms of the settlement agreement. Don was very upset and concluded that if Jimmy had violated the agreement right in Don's own "backyard," he must have been violating it elsewhere as well. His suspicions were confirmed by two former employees of the company who said that Jimmy had "bad-mouthed" Don in their presence. Don contended that this discovery placed a tremendous emotional strain on him because he felt that he had sacrificed a winning libel suit in 1980 for an apparently worthless agreement to stop the behavior that upset him so much.

After his suspicions about the newspaper article were confirmed by Jimmy's two former employees, Don filed suit in federal district court. In the course of discovery, he learned that Jimmy had made similar statements to other people. At trial, Don brought forth six witnesses who testified that they had heard Jimmy recite a slanderous poem about Don. He also produced some evidence from doctors and friends that the discovery of Jimmy's infraction severely distressed Don and caused him noticeable physical harm, including aggravation of a nervous condition and premature aging.

This suit was tried purely on the basis of a breach of contract theory. Jimmy moved for a directed verdict, contending, *inter alia*, that damages could not be recovered for injuries based on emotional harm suffered as a result of contractual breaches. The district court denied this motion. The jury was then instructed on the law regarding the recovery for such damages. The jury returned a verdict in Don's favor for $500,000 ($350,000 for emotional suffering

and $150,000 for extreme injury to physical health). An award of $80,000 was also made for Don's attorneys' fees.

Jimmy sought a judgment notwithstanding the jury's verdict with regard to both the damage awards and the attorneys' fee award and alternatively a remittitur for reduction of the award or a new trial. Each motion was rejected by the district court.

On appeal, Jimmy raises a number of issues. His main contention, though, is that Don cannot recover for any emotional distress resulting from the breach of the settlement agreement. We agree with that basic proposition and hold that as a matter of law Texas would not allow any recovery of damages for mental anguish that results from the breach of the settlement agreement. Thus, we need not address the other issues raised by Jimmy.[2]

## II.

Texas courts have established the general rule that mental anguish damages may not be recovered in an action for a breach of contract. *See, e.g., Rogowicz v. Taylor & Gray, Inc.,* 498 S.W.2d 352, 355 (Tex.Civ. App.—Tyler 1973, writ ref'd n.r.e.). An exception to this rule has been recognized in a limited number of situations

> where it is shown that mental perturbation was more than ordinary regret or annoyance but is of the type commonly denominated as mental anguish; provided, however, the mental anguish must be shown to have been such a necessary and natural result of the breach … as would be held to have been within the contemplation of the defendant at the time the contract was made.

Order of Dismissal attached hereto as Exhibit "B".

It is the express intention and agreement of the parties that neither of the parties at any time hereafter, shall make or permit to be made any statements about the other party's conduct, character, ability, reputation or honesty, except as expressly permitted in this paragraph nor authorize, approve or knowingly permit their agents, representatives, employees or spokesmen to do so.

Settlement Agreement, Paragraph 4 (emphasis represents a handwritten insertion in the agreement).

2. The other issues were: (1) whether Don was entitled to separate recovery for the physical manifestations of his mental anguish and whether there was any evidence of extreme physical injury; (2) whether the damages awarded were excessive; and (3) whether Don presented sufficient evidence to support the award of attorney's fees.

*Id.* This exception has also been described by another Texas court as follows:

"Where the contract is personal in nature and the contractual duty or obligation is so coupled with matters of mental concern or solicitude, with the sensibilities of the party to whom the duty is owed, that a breach of that duty will necessarily or reasonably result in mental anguish or suffering, and it should be known to the parties from the nature of the contract that such suffering will result from its breach, compensatory damages therefor may be recovered."

*Pat H. Foley & Co. v. Wyatt*, 442 S.W.2d 904, 906 (Tex.Civ.App.—Houston [14th Dist.] 1969, writ ref'd n.r.e.) (quoting *Lamm v. Shingleton*, 231 N.C. 10, 55 S.E.2d 810 (1949)). Thus, it is only in the personal contract area under limited circumstances that recovery for damages for mental anguish are permitted.

The reason the courts are hesitant to allow any recovery for mental anguish in breach of contract cases is the ease with which mental suffering may be simulated and the difficulty in disproving its existence. *See id.* at 906–07. The limitation on recovery is designed to keep closed the floodgates of frivolous claims seeking recovery for emotional distress resulting from a breach of contract that would certainly arise if such recovery were generally authorized.

The courts have thus sharply limited recovery to certain types of contracts where the mental anguish is shown to have been such a necessary and natural result of the breach as to have been within the contemplation of the parties at the time the contract was entered. For example, recovery has been permitted for a breach of contract involving services rendered in regard to dead bodies, *see, e.g., Pat H. Foley & Co.*, 442 S.W.2d at 907, for the failure to transmit and deliver a telegram (when a breach of contract is shown), *see* cases cited in 51 Texas Jur. Mental Anguish § 14, a suit for the breach of a promise to marry, *Daggett v. Wallace*, 75 Tex. 352, 13 S.W. 49, 50 (1889), and for a common carrier's refusal to honor a passenger's ticket for travel,

*see, e.g., State National Bank of Iowa v. Rogers*, 89 S.W.2d 825, 827 (Tex.Civ.App.—Fort Worth 1935) (citing *Austro-American Steamship Co. v. Thomas*, 248 F. 231 (1917)); *but see Freeman v. Clark*, 107 Tex. 298, 177 S.W. 1189, 1192 (1915) (not every breach of a contract for transportation will support a claim for mental anguish).

The Restatement (Second) of Contracts, expresses a similar rule:

Recovery for emotional disturbance will be excluded unless the breach also caused bodily harm or the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result.

The comment to this section expands upon this rule:

Damages for emotional disturbance are not ordinarily allowed. Even if they are foreseeable, they are often particularly difficult to establish and measure. There are, however, two exceptional situations where such damages are recoverable. In the first, the disturbance accompanies a bodily injury. In such cases the action may nearly always be regarded as one in tort, although most jurisdictions do not require the plaintiff to specify the nature of the wrong on which his action is based and award damages without classifying the wrong. See Restatement, Second, Torts §§ 436, 905. In the second exceptional situation, the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result. Common examples are contracts of carriers and innkeepers with passengers and guests, contracts for the carriage or proper disposition of dead bodies, and contracts for the delivery of messages concerning death. Breach of such a contract is particularly likely to cause serious emotional disturbance. Breach of other types of contracts, resulting for example in sudden impoverishment or bankruptcy, may by chance cause even more severe emotional disturbance, but, if the contract is not one where this was a particularly likely risk, there is no recovery for such disturbance.

Restatement (Second) of Contracts § 353 comment a (1981). In keeping with the Restatement rule, in numerous other situations the courts have refused to allow any recovery for emotional distress. Thus, in *Freeman* the court held that a passenger could not recover from a common carrier because while the facts in the case might have caused " 'regret with a majority of civilized men, [the court did] not believe it [was] a matter of common knowledge that all, or even a majority, of such men would, under such circumstances, suffer that degree of mental perturbation denominated mental anguish.' " *Freeman*, 117 S.W. at 119 (quoting with approval opinion of the Court of Civil Appeals). In *Rogers* the court did not allow recovery for mental suffering by a bank's customer when the bank refused payment on a check issued by the customer. The court refused to extend such a cause of action from the types of situations enumerated above. *Rogers*, 89 S.W.2d at 827. In *Myrtle Springs Reverted Independent School District v. Hogan*, 705 S.W.2d 707, 710 (Tex.Ct.App.—Texarkana 1985), the court held that damages for mental anguish for the breach of an employment contract were not foreseeable and therefore could not be recovered.

■ In all of these cases the basic requirement is that the essence of the contract must be so related to the matter of the mental concern of the party to whom a duty is owed under the contract that the parties would reasonably contemplate that a breach would most likely cause severe mental anguish. Generally, the cases allowing recovery involve contracts related to personal feelings. Thus, recovery has been allowed in highly personal contracts such as those involving dead bodies or the delivery of messages relating to death. In other situations, where the contract does not have as its essence personal feelings so that it is not particularly likely that a party to it would suffer mental anguish from a breach, the courts consistently hold that the parties did not contemplate that emotional distress would result from a breach and such damages cannot be recovered. We believe the settlement agreement in the present case fits within the latter category, and that as a matter of law Don should not have been able to recover damages for any emotional distress he suffered because of a breach of that agreement.[3]

■ We first point out that Texas courts have not yet addressed the issue of the right to recover emotional damages for breach of a settlement agreement. In the absence of any controlling decision, we must make an educated guess as to how the Texas Supreme Court would rule. *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1217 (5th Cir.1985).[4] However,

---

3. Unlike the contracts in most of the cases where recovery for mental anguish was allowed for a breach, the settlement agreement in this case was a negotiated one between the parties. Thus had the parties contemplated at the time of its negotiation that mental damages would be an element of damages growing out of a breach of the agreement, they could have so provided by language to that effect in the agreement.

4. We recognize that the district court allowed Don to recover for his mental anguish, and that typically a district court's determination of state law is given special deference. *See id.; NCH Corp. v. Broyles*, 749 F.2d 247, 253 n. 10 (5th Cir.1985). However, this court is not bound by the district court's interpretation and can reverse the court if we believe the court has incorrectly applied the state's law. *See, e.g., St. Paul Fire & Marine Insurance Co. v. Rock-Tenn Co.*, 787 F.2d 340, 341 (8th Cir.1986); *Complex, S.A. v. La Bow*, 783 F.2d 333, 340 n. 16 (2d Cir.1986). Any deference accorded to the district court is also less where the court fails to set out any analysis in predicting how the state's highest

court would rule on a novel question of state law or if the interpretation of the state law is deficient in analysis or otherwise lacking in reasoned authority. *Weiss v. United States*, 787 F.2d 518, 525 (10th Cir.1986); *Gillette Dairy, Inc. v. Mallard Manufacturing Corporation*, 707 F.2d 351, 353 (8th Cir.1983).

Moreover, when the state law only offers general guidance, the district court's decision is not entitled to any deference. *In re Mistura, Inc.*, 705 F.2d 1496, 1497–98 (9th Cir.1983). In such a situation, we cannot adopt the district court's view of applicable state law if, in our view, it is contrary to the more cogent reasoning of the best and most wide-spread authority. *Ward v. Hobart Manufacturing Co.*, 450 F.2d 1176, 1180 n. 5 (5th Cir.1971).

We believe in the present case that the lack of relevant state authority on point, combined with the district court's lack of analysis regarding whether Texas would allow recovery for mental anguish damages resulting from the breach of a settlement agreement, permits us to dispense with the usual deference accorded the district

when we do so, we are mindful that it is not for us to adopt innovative theories of recovery for Texas law, *id.*, but rather we must proceed cautiously. *Id.* at 1217 n. 8.

When there is no specific guidance from any Texas court, and when we decline to defer to the district court (*see* note 4 *supra*), we are left to examine the rule in other states looked to by Texas courts as well as other available sources, such as treatises and law review commentaries. *See Jackson v. Johns-Manville Sales Corp.*, 781 F.2d 394, 397 (5th Cir.1986) (en banc). Our research has disclosed only two cases that have dealt with the issue presented to us. In neither case did the court allow recovery for mental anguish resulting from the breach of a settlement agreement.

In *Trimble v. City of Denver*, 697 P.2d 716 (Colo.1985), a doctor, Trimble, had entered into a settlement agreement intended to resolve a number of conflicts existing between him and the Denver General Hospital and a second doctor, Kauvar, including the remedying of damage to Trimble's reputation. *Id.* at 720. The settlement agreement was not honored, and Trimble subsequently brought suit seeking damages for tortious conduct and for breach of contract. *Id.* at 722. The trial court assessed damages, including damages in the amount of $35,000 for mental suffering. *Id.* On appeal, the court of appeals reversed the trial court. *Id.* at 730. The Colorado Supreme Court reversed the court of appeals regarding the judgment as to Kauvar, holding that Trimble could recover for his mental suffering based on a tort theory. The court then examined whether the Denver city hospital could be held liable for mental suffering damages based on a contract theory.[5] In deciding this issue, the court did not allow recovery for the breach of the settlement agreement because it was not foreseeable that the breach of the contract by the city would

cause mental suffering. *Id.* at 732. Thus, the court concluded the breach of the settlement agreement was not one of the special cases where emotional distress damages could be recovered.

In *McNeill v. Elhringer*, 231 La. 1090, 93 So.2d 669 (1957), a divorced wife attempted to recover emotional distress damages based on the allegation that her former husband breached a community property settlement agreement. *Id.* at 670. The breach was the failure of the husband to pay off tax liens he had promised to extinguish, *id.*, which the wife claimed "caused her worry, embarrassment and inconvenience." The court held: "We know of no law making such a claim cognizable." *Id.* Thus, although the court did not expand upon its decision, it seems it did not believe that the breach of a settlement agreement was a special circumstance where it was foreseeable that emotional damages would result.

While the facts in *Trimble* and *McNeill* are slightly different from that of the present case, in both cases neither party was allowed to recover damages based on mental anguish resulting from the breach of the settlement contract. We believe that the Texas courts would look to these decisions and likewise decline to establish a cause of action in such a situation. Bolstering this opinion is the long-standing general unwillingness of Texas courts except in very limited situations to recognize the right to recover for mental anguish that results from a breach of contract. Moreover, as a federal court attempting to determine state law, we are especially hesitant to invent a new cause of action or even to extend the existing case law and establish a right to recover damages for mental anguish in the situation presented here. Instead, we take the cautious and what we deem prudent approach and follow *Trimble* and *McNeill* and the Texas trend of limit-

court's ruling on the right to recover under state law.

5. The court stated:

 Lastly, we must determine whether damages for mental suffering can be recovered ... based on the cases that permit such recovery

where the contract is of such a personal and special nature that the parties knew, or should have known, that a breach would result in severe mental or emotional distress.

*Id.* at 731.

ing such actions and disallow Don's recovery.

### III.

For these reasons, the judgment of the district court is REVERSED and the case is remanded for the district court to enter judgment dismissing this action on the merits.