# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fif h Circuit

**FILED**
March 16, 2017

Lyle W. Cayce
Clerk

No. 16-10537

CHARLA ALDOUS; CHARLA G. ALDOUS, P.C., doing business as Aldous Law Firm,

Plaintiffs - Appellants Cross-Appellees

v.

DARWIN NATIONAL ASSURANCE COMPANY,

Defendant - Appellee Cross-Appellant

Appeals from the United States District Court
for the Northern District of Texas

Before REAVLEY, ELROD, and GRAVES, Circuit Judges.

REAVLEY, Circuit Judge.

Litigation over two trusts begat litigation between the prevailing party, Albert Hill III, and his attorneys. Appellant Charla Aldous is one of those attorneys, and she prevailed against her erstwhile client. In addition to establishing an entitlement to significant attorney's fees, Aldous and her cohort also successfully defended against breach of contract and professional negligence claims, among others. Hill's claims against the attorneys triggered insurance coverage provided by appellee Darwin National Assurance, Co., Aldous's insurer. And now, in this third layer of litigation, we confront the

No. 16-10537

resulting coverage dispute. Aldous claims Darwin did not pay enough to fully cover the costs of her defense. Darwin asserts it paid too much.

This case was decided in favor of Darwin on summary judgment. In a ruling that effectively doomed Aldous's claims, the district court ruled she was judicially estopped from claiming defense costs in excess of $668,068.38. Building on this ruling, the district court further found that Darwin was entitled to recover "overpayments" on an equitable "money had and received" theory. Aldous appealed.

In addition to issues raised by the district court's summary judgment ruling, we are also called upon to decide whether the district court erred in partially granting a motion to dismiss brought by Darwin. Lastly, Darwin has filed a cross-appeal, contending that judgment should not have been granted in favor of Aldous with respect to a breach of contract claim.

## I.     BACKGROUND

Along with Lisa Blue and Steve Malouf, Aldous represented Hill in litigation that resulted in a judgment for their client valued at $114,745,870. (The association of lawyers Blue, Aldous, and Malouf are hereinafter referred to as "BAM.") BAM represented Hill on a contingency basis, but Hill did not want to pay. Litigation ensued. After BAM sued Hill, Hill counterclaimed, alleging breach of fiduciary duty, duress, breach of oral contract, fraud, and professional negligence.

Aldous had a valid professional liability insurance policy through Darwin (the "Policy"), and Hill's counterclaims triggered coverage. Blue and Malouf were also covered under separate policies through separate insurers. BAM had already retained Alan Loewinsohn to represent its affirmative claims against Hill and requested that the insurers allow Loewinsohn to handle the defense as well. The insurers relented. The various parties agreed (and continue to agree) that Darwin is responsible only for one-third of the covered

2

costs of defense; Blue and Malouf (or their insurers) were separately responsible for their one-third shares.

BAM ultimately prevailed against Hill, securing an award of $21,942,961 in earned attorney's fees (offset by $691,175.93), costs of $479,595.67, and the "reasonable costs and fees in defending against Hill III's counterclaims in the amount of $2,586,560.11." By the time judgment was entered, Aldous and Darwin were already embroiled in this coverage dispute.

Aldous filed this suit in Texas state court, and it was removed to federal court on the basis of diversity jurisdiction. As relevant here, Aldous alleged breach of contract, breach of the duty of good faith and fair dealing, violations of the Texas Insurance Code, and violations of the Texas Deceptive Trade Practices Act. She also sought a declaratory judgment that Darwin is liable for the costs associated with the prosecution of her affirmative claims against Hill to the extent those affirmative claims were inextricably intertwined with her defense. Darwin counterclaimed, alleging (among other things) breach of contract, unjust enrichment, and money had and received. The district court partially granted a Rule 12(b)(6) motion filed by Darwin, dismissing Aldous' breach of the duty of good faith and fair dealing claim, as well as a Texas Insurance Code § 541 claim and the Texas Deceptive Trade Practices Act claim. Subsequently, the parties filed cross-motions for summary judgment.

On summary judgment, the district court ruled largely in favor of Darwin. In a ruling with major consequences, the district court ruled that Aldous was judicially estopped from claiming that the costs in defending against Hill's counterclaims exceeded $668,068.38. This ruling meant that Darwin's coverage obligations were limited to $222,689.44—one-third of the total cost to defend. Darwin had paid Aldous far more than that, $502,364.59. Based on this ruling, Aldous' breach of contract claim necessarily failed. The judicial estoppel ruling also meant that Darwin had overpaid, and the district

court ruled that Darwin could recover this overpayment through an action for money had and received. The district court further ruled that Aldous was not entitled to costs related to the prosecution of her affirmative claims against Hill, even if she could show those affirmative claims were inextricably intertwined with her defense against Hill's counterclaims. And, as clarified in a subsequent order, the district court granted summary judgment against Darwin with respect to its breach of contract counterclaim, reasoning that the anti-subrogation rule prevented it from asserting subrogation rights against its own insured.

## II.     STANDARD OF REVIEW

**Summary Judgment.** Summary judgment rulings are subject to *de novo* review. *Cal-Dive Int'l, Inc. v. Seabright Ins. Co.*, 627 F.3d 110, 113 (5th Cir. 2010). "We will affirm the district court's judgment if no genuine issues of fact are presented and if judgment was proper as a matter of law." *Id.* On cross-motions for summary judgment, we consider "each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Morgan v. Plano Indep. Sch. Dist.*, 589 F.3d 740, 745 (5th Cir. 2009).

**Motion to Dismiss.** Dismissal for failure to state a claim is also reviewed *de novo*. *Colony Ins. Co. v. Peachtree Const., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011). Dismissal is appropriate if, assuming the truth of all facts alleged in the complaint, the plaintiff is not entitled to relief as a matter of law. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009); *see* Fed. R. Civ. P. 12(b)(6).

## III.     DISCUSSION

### A.     Judicial Estoppel

As the parties understand, the district court's judicial estoppel ruling had major ripple effects. It is the foundation of the grant of summary judgment

in favor of Darwin's equitable claim for relief, and it precludes Aldous from establishing any breach of contract.  As we will see, however, the foundation is faulty.    Application of judicial estoppel was inappropriate.

Texas law governs the substance of this dispute, but "we apply federal principles of judicial estoppel."  *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 859 (5th Cir. 2010).  There are two basic requirements: "First, it must be shown that 'the position of the party to be estopped is clearly inconsistent with its previous one; and [second,] that party must have convinced the court to accept that previous position."[1]  *Id.* (quoting *Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003)).  That said, "the Supreme Court has refused to 'establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel,' stating instead that different considerations 'may inform the doctrine's application in specific factual contexts.'"  *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011) (en banc) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 751, 121 S.Ct. 1808, 1815 (2001)).  Even when serving as the basis for a summary judgment ruling, a district court's judicial estoppel determination is reviewed for abuse of discretion.  *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 384 (5th Cir. 2008).  "A district court abuses its discretion if it misapplies the law or bases its decision upon erroneous findings of fact."  *RSR Corp.*, 612 F.3d at 859.

After thorough review of the record, we can only conclude that Aldous never took the position (let alone "clearly") that her defense costs in the underlying suit were limited to $668,068.31 and that the prior court never accepted such a position.  The district court's contrary determination represents an abuse of discretion.

---

[1] Though not relevant here, we also typically ask whether the party to be estopped acted inadvertently.  *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011) (en banc).

During the prior proceedings, BAM was required to show how much it expended both in prosecuting its claims against Hill and in defending against Hill's counterclaims. The parties stipulated that these attorney's fees could be established through declarations, and BAM's attorney filed a series of relevant declarations (the "Loewinsohn Declarations"). The first of the declarations makes it plain that BAM did not claim its costs of defense were limited to $668,068.31. Therein, Loewinsohn asserted legal fees of $2,054,178.18, including both affirmative *and defensive* claims. He expressly declared that the "fees and expenses can all be allocated either to the prosecution of BAM's breach of contract claim or to the defense of the counterclaims and affirmative defenses asserted by the Hills, which was necessary in BAM's prosecution of their claim, or both."

That first declaration was filed on April 29, 2011. After that day, the rest of the litigation concerned only Hill's counterclaims. On June 29, 2011, Loewinsohn submitted a "supplemental declaration" that further testified that "for the time period of May 1, 2011 to June 24, 2011, for the defense of the Counterclaims," $668,068.31 had been reasonably expended. Then, on January 9, 2012, he submitted a "second supplemental declaration" which "incorporated by reference" the first and reiterated his opinion "that an attorney's fee, including expenses, of $668,068.31 was a reasonable and necessary fee for the defense of the Counterclaims." As can be readily seen, mere recitation of the Loewinsohn Declarations establishes that Aldous never claimed that defense costs totaled $668,068.31. Rather, the fees incurred after April 29 totaled $668,068.31 and were purely defense-related.

Two other notable facts emerge from the declarations and a review of the prior proceedings. First, the reason that fees incurred after April 29 related solely to defending against Hill's claims is that BAM's affirmative claims had already been litigated. An evidentiary hearing commencing April 20th

resolved those claims.  Second, the lion's share of dispositive defense work was done *prior* to April 29, as shown by the judge's ruling that, with one exception, all of Hill's counterclaims "were legally barred based on her prior rulings" stemming from the April 20 hearing.[2]

The district court's ruling contains several errors.  Most fundamentally, the district court unjustifiably read the supplemental declaration in isolation. It took as Aldous's binding position that defense costs in the prior proceeding were incurred *only* between May 1 and June 24 and that those costs totaled $668,068.31.  To make this large error, the district court was required to make small antecedent errors.

For example, the district court refused to credit Aldous's argument that the first declaration did not segregate fees and therefore included costs related to defending against Hill.  In the district court's view, this argument was undercut by the fact that "Loewinsohn segregate[d] the fees associated with the affirmative and defensive claims in his supplemental and second supplemental declaration." *Charla G. Aldous, P.C. v. Darwin Nat. Assur. Co.*, 92 F.Supp.3d 555, 566 (N.D. Tex. 2015).  Loewinsohn's newfound ability to segregate fees is easily explained, however.  As mentioned above, after June 29 the only remaining work to be done was defense work.

Further, even the district court's interpretation of the supplemental declaration ignores its plain language.  The supplemental declaration establishes fees incurred "for the time period of May 1, 2011 to June 24, 2011."

---

[2] That is not to say that the lion's share of defensive *costs* were necessarily incurred during that time.  The cost of the defense work done during that period is a disputed question of fact.  And, as will be seen later, we reject Aldous's argument that Darwin must pay all costs of prosecuting BAM's affirmative claims to the extent the costs were "inextricably intertwined" with the defense.  It does, however, vindicate Aldous's position, taken early in the coverage dispute, that the April 20th hearing, though ostensibly intended only to resolve BAM's affirmative claims, would serve as the proving ground for BAM's defense as well.

When Aldous pointed out that the declaration was time-limited, the district court closed its ears and refused to consider the point. *See id.* at 566 ("The purpose of judicial estoppel, however, prevents Plaintiffs from taking positions such as this one."). As the district court saw it, judicial estoppel itself precluded Aldous from explaining her prior position. It should go without saying that judicial estoppel cannot be applied to the question of whether judicial estoppel applies. Aldous should have been permitted make arguments reconciling and harmonizing the declarations.[3]

We also cannot condone the district court's approach to the second aspect of judicial estoppel—whether the first court accepted the prior inconsistent position. To find judicial estoppel applicable, the district court was required to find that the prior court accepted $668,068.31 as BAM's total costs on defense. Instead, the prior court issued a judgment "[t]hat BAM shall recover from Hill III its reasonable costs and fees *in defending* against Hill III's counterclaims in the amount of $2,586,560.11." (Emphasis added.) As Aldous argues, this single sentence from the judgment demonstrates that judicial estoppel was improper.

Nonetheless, the district court found that the "record clearly reflects the court's acceptance of and reliance on Plaintiffs' prior position in the Hill lawsuit." *Charla G. Aldous, P.C.*, 92 F.Supp.3d at 568. The evidence cited by the district court does not show that the prior court accepted $668,068.31 as

---

[3] The district court's interpretation of the Loewinsohn Declarations requires the acceptance of a very unlikely fact—that BAM did not spend any resources defending against the counterclaims until May 1, 2011, even though Hill filed the counterclaims on February 15, 2011. The district court had an explanation: "Hill filed his counterclaims on February 15, 2011, and Aldous provided notice of this counterclaim to Darwin on March 9, 2011. . . . Thus, Loewinsohn's estimation that his work for defense occurred between May 1, 2011–June 24, 2011, is not unreasonable, despite Plaintiffs attempt to make it appear so." 92 F.Supp.3d at 566–67. Without remarking on whether this reasoning is plausible, we note that it includes a clear error of fact. Aldous provided notice of the counterclaims to Darwin on February 17, 2011, a mere two days after Hill filed them.

the full measure of defense costs. It shows the parties agreed "to be bound by [the prior court's] attorney's fees determination" and "agreed that they would submit the issue of attorney's fees to [a magistrate judge]; that they could appeal only to [a district court judge]; and that they would not request an additional evidentiary hearing before [the district court judge]." *Id.* The relevance of this procedural background and summary of the parties' agreements is unclear. What is clear is that the district court erred in assessing the evidence.

Judicial estoppel is an equitable doctrine concerned with "judicial acceptance of an inconsistent position in a later proceeding [that] would create the perception that either the first or the second court was misled." *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 170, 130 S.Ct. 1237, 1249 (2010) (quoting *New Hampshire v. Maine*, 532 U.S. at 750, 121 S.Ct. at 1815). Nothing in the judgment issued by the prior court would suggest that Aldous should not be permitted to claim defense costs in excess of $668,068.31. Indeed, the judgment suggests defense costs far outpacing that figure. Any inconsistency of rulings was confected when the district court estopped Aldous from claiming BAM's costs on defense exceeded $668,068.31. We now undo that error.[4]

---

[4] Darwin asserts that collateral estoppel also applies because "[t]he amount of fees and expenses reasonably incurred in the defense of the Fee Counterclaim that was submitted to Darwin for coverage was distinctly at issue in the Fee Lawsuit, was in fact litigated, and was determined" in the prior proceedings. Darwin does not point us to the specific ruling it believes should be given preclusive effect, however. In the ordinary course, if collateral estoppel were appropriate, we would give preclusive effect to rulings deemed "necessary to [the] final judgment." *See Duffy & McGovern Accommodation Servs. v. QCI Marine Offshore, Inc.*, 448 F.3d 825, 829 (5th Cir. 2006). Here, that would mean Aldous has already established "reasonable costs and fees in defending against Hill III's counterclaims in the amount of $2,586,560.11." Any different prior-court ruling Darwin may have in mind was manifestly not essential to the final judgment. Fortunately for Darwin, it is inappropriate to apply collateral estoppel against a party who did not have a full and fair opportunity to litigate the question. *See Taylor v. Sturgell*, 553 U.S. 880, 892, 128 S.Ct. 2161, 2171 (2008).

No. 16-10537

## B.     Aldous's Claims

### 1.     Breach of Contract

The district court granted summary judgment on Aldous's breach of contract claim in part because Aldous had already received from Darwin payments in excess of its one-third share of $668,068.31 in defense costs. That logic was predicated on the judicial estoppel ruling and no longer holds. But the district court also granted summary judgment against Aldous for reasons beyond the judicial estoppel ruling. Under the district court's interpretation of the contract, Darwin "did not breach the contract as a matter of law because the terms of the Policy provide Defendant with discretion to determine reasonable claim expenses." *Charla G. Aldous, P.C.*, 92 F.Supp.3d at 569. We cannot agree. Summary judgment should not have been granted against Aldous on the breach of contract claim.

"Interpretation of an insurance contract is a question of law," meaning our review is *de novo*. *Tesoro Ref. & Mktg. Co., L.L.C. v. Nat'l Union Fire Ins. Co.*, 833 F.3d 470, 473 (5th Cir. 2016). "Under Texas law, we interpret insurance policies using the same rules of interpretation and construction applicable to contracts generally." *Id.* at 474. The Policy contains a promise that Darwin will pay "all" covered "Claim Expenses." Only "reasonable" expenses qualify, however, and "[t]he determination by the insurer as to the reasonableness of Claim Expenses shall be conclusive on all Insureds." The district court interpreted these provisions to provide Darwin with a right to decide how much it wants to pay. And there was no breach, according to the district court, because Darwin merely exercised that right and did not do so arbitrarily:

> Darwin's stated reasons for making the deductions demonstrate that it did not arbitrarily make these deductions but rather made a determination as to the reasonableness of the Claim Expenses, as permitted by the Policy, according to reasonable considerations,

10

such as its Billing Guidelines and the fact that it did not have a duty to pay for attorney's fees associated with BAM's affirmative claims.

*Charla G. Aldous, P.C.*, 92 F.Supp.3d at 571.

Aldous contends that Darwin never made a reasonableness determination that should now be treated as binding and that the district court's interpretation of the Policy renders the duty to defend illusory. According to Darwin, "the District court determined 'as a matter of law' that Darwin did not breach the Policy in making the reductions, because the Policy gave Darwin the right to do so," such that "[e]vidence" of a reasonableness determination was "unnecessary." This is an accurate description of the district court's ruling, but it proves Aldous's point. If the Policy provides Darwin with the unquestionable right to pay only to the extent it pleases, it is illusory. Accordingly, we agree with both aspects of Aldous' argument.

Darwin's right to make a binding determination regarding the reasonableness of Aldous's claims would be implicated only if Darwin actually made a reasonableness determination. Darwin disclaims any obligation to provide evidence of reasonability and goes further still, asserting that "[e]vidence showing example of" the challenged "reductions was . . . unnecessary." Despite this questionable assertion, it assures us "[t]he pleadings and evidence are replete with examples of Darwin's 'reasonableness' determinations." From a record "replete" with examples, however, it gives us none. Instead, it points us into legal thickets.

For example, Darwin asserts that its reliance on billing guidelines to categorically exclude certain expenses represents a reasonableness determination and explains that "Darwin was clear from the beginning that its consent to Loewinsohn as counsel . . . was conditioned upon 'adherence to Darwin's Billing and Reporting Guidelines.'" The "Billing Guidelines" are not part of the Policy, and Darwin informed Aldous of its intent to utilize them

only in a reservation-of-rights letter. But "a unilateral reservation-of-rights letter cannot create rights not contained in the insurance policy." *Texas Ass'n of Cntys. Cnty. Gov't Risk Mgmt. Pool v. Matagorda Cnty.*, 52 S.W.3d 128, 131 (Tex. 2000). The same is true of the Billing Guidelines themselves. As a matter of basic contract law, an extra-contractual document—a document to which Aldous never agreed—cannot limit or define her rights under the Policy. *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007) (identifying "mutual assent" as a basic component of any contractual agreement); *see also Philadelphia Indem. Ins. Co. v. Chicago Title Ins. Co.*, Case No. 09 C 7063, 2012 WL 2115487, at *5 (N.D. Ill. June 10, 2012) (rejecting an argument that "later-provided conditions can govern the amount to which an insured is entitled when those guidelines were not a part of the original insurance contract.").

Darwin also refers us to Aldous's brief, which assertedly "describes and cites extensive evidence of reductions Darwin made to defense bills based on the Billing Guidelines." Again, reliance on the Billing Guidelines is problematic under the circumstances.[5] Further, survey of the evidence cited in Aldous's brief suggests that Darwin's reductions were in fact made arbitrarily and even against the Darwin adjuster's reasoned judgment.

In correspondence with Aldous, Darwin explained that it reached the proper sum by applying "Billing Guidelines" calling for certain relatively modest deductions "off the top." Far more significant was its next step—simply cutting the remaining claimed balance *in half* based on an assumption that half of the claimed costs were associated with prosecution of Aldous' affirmative claims and were therefore not covered. It made this "50/50

---

[5] In the ordinary case, where the insurer has selected and retained counsel, the Billing Guidelines may very well have a wholly different and perfectly appropriate application. But they are not part of the agreement between the insurer and insured.

reduction" even though Aldous's invoicing had already been adjusted to eliminate costs related solely to the affirmative claims.  Darwin's own adjuster initially opposed cutting Aldous's claimed costs in this manner, saying such an approach "would be taking two bites at the apple and would be deducting likely more than we should."  The adjuster was persuaded to fall into line not by Darwin officials asserting "reasonableness" but by the insurance companies representing Blue and Malouf.  The record shows that Travelers insurance company pressed the 50/50 reduction.  Further, the Travelers adjuster's rationale had nothing to do with a reasonableness determination.  Rather, the evidence indicates that Travelers was still bitter about Loewinsohn's retention, reasoned "What's the harm in trying?," and "suspect[ed]" the insureds wouldn't "quibble over a hundred thousand here or there."

We do not opine on the general enforceability of the Policy provision at issue.  We hold that it is simply not implicated on these facts, where there is no evidence that Darwin made any genuine determination as to the reasonableness of claimed fees and instead slashed the claimed defense costs arbitrarily.  As Aldous argues, under the circumstances, reading the Policy to effectively immunize Darwin from breach of contract claims would render the contract illusory.  *See Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660, 669 (Tex. 2008) ("We cannot adopt a construction that renders any portion of a policy meaningless, useless, or inexplicable.").  Darwin is not entitled to summary judgment on Aldous's breach of contract claim.  In ruling otherwise, the district court erred.

2.    Declaratory Judgment

Aldous seeks "a declaration that Darwin was required to pay all of [Loewinsohn's] attorneys' fees and costs that were inextricably intertwined with her defense and pursuit of her affirmative claim."  In other words, though the Policy covers only expenses related to the *defense* against Hill's claims,

No. 16-10537

Aldous seeks to recover fees related to the affirmative prosecution of her affirmative claims insofar as it can be said the work was "inextricably intertwined" with the defense.  The problem with this argument is that there is absolutely no support for it.

As a federal court with diversity jurisdiction and an obligation to follow Texas law, innovation is verboten.  *Dean v. Dean*, 821 F.2d 279, 284 (5th Cir. 1987).  No Texas court has ever held that the duty to defend includes the duty to pay legal fees incurred in the course of prosecuting affirmative claims that are inextricably intertwined with the defense.  Relied upon by Aldous, *Zurich American Insurance Co. v. Nokia, Inc.*, explains that "[i]f a complaint potentially includes a covered claim, the insurer must defend the entire suit." 268 S.W.3d 487, 491 (Tex. 2008).  The duty to *defend* the entire suit does not give rise to a duty to prosecute claims helpful to or even inextricably intertwined with that defense, however.  Aldous also points to *Stewart Title Guaranty Co. v. Sterling*, 822 S.W.2d 1 (Tex. 1991).  *Stewart Title* is concerned with the circumstances under which a plaintiff seeking attorney's fees from a vanquished defendant may also recover attorney's fees related to defending against that same defendant's counterclaims—"when the attorney's fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their 'prosecution or defense entails proof or denial of essentially the same facts.'"  *Id.* at 11 (quoting *Flint & Assocs. v. Intercont'l Pipe & Steel, Inc.*, 739 S.W.2d 622, 624–25 (Tex. App. 1987)).  The case has nothing to do with an insured's duty to defend and does not support Aldous' novel argument that the duty to defend may also include a duty to prosecute integrally related affirmative claims.

Aldous cites no Policy language in support of her argument, which the district court rightly viewed as an effort to rewrite the agreement.  *See Mustang Tractor & Equip. Co. v. Liberty Mut. Ins. Co.*, Case No. CIV. A. H-91-

14

No. 16-10537

2523, 1993 WL 566032, at *9 (S.D. Tex. Oct. 8, 1993), *aff'd*, 76 F.3d 89 (5th Cir. 1996) (declining to extend an insurer's duty to defend to cover prosecution of defense-minded affirmative claims because, while "the duty to defend is expansive," all surveyed "cases uniformly hold that the duty is limited to cases potentially within the policy coverage").  Aldous is not entitled to the declarations she seeks, and summary judgment was properly granted against her on these claims.  Based on our rulings thus far, the proper measure of covered defense costs remains an unsettled question of fact.

3.    Breach of the Duty of Good Faith and Fair Dealing

Aldous's claim for breach of the duty of good faith and fair dealing did not survive Darwin's motion to dismiss for failure to state a claim.  For over twenty years, the law in Texas has been clear that an insurer does not owe its insured "a duty of good faith and fair dealing to investigate and defend claims by a third party against its insured."[6]  *Maryland Ins. Co. v. Head Indus. Coatings & Servs., Inc.*, 938 S.W.2d 27, 27 (Tex. 1996).  Nonetheless, Aldous asserts that a failure to provide the required defense may represent a breach of the duty of good faith and fair dealing.  Consistent with *Mid-Continent Casualty. Co. v. Eland Energy, Inc.*, 709 F.3d 515 (5th Cir. 2013), we reject that argument.

"Under Texas law, an insurer owes a duty of good faith in handling its insured's own claim of loss."  *Med. Care Am., Inc. v. Nat'l Union Fire Ins. Co.*, 341 F.3d 415, 425 (5th Cir. 2003).  But there is no common law duty of good faith and fair dealing between an insurer and insured with respect to third-

---

[6] *Head Industrial* has been partially superseded by statue as explained in *Chickasha Cotton Oil Co. v. Houston General Insurance Co.*  *See* Case No. 05-00-01789-CV, 2002 WL 1792467, at *7 (Tex. App. 2002).  "However, *Head Industrial* has not been overruled relative to an insured's attempt to impose common-law, as opposed to statutory, duties on an insurer with respect to settling third-party claims."  *Methodist Hosp. v. Zurich Am. Ins. Co.*, 329 S.W.3d 510, 517 n.6 (Tex. App. 2009).

party claims. *Eland Energy*, 709 F.3d at 520. The parties agree that the viability of the cause of action depends on whether Aldous' claim is classified as a first-party claim or a third-party claim.

To identify the nature of the claim, it is proper to ask: When the insured "sought coverage" was it to cover its own loss or the loss of a third party? *Id.* at 520–21; *see also Lamar Homes, Inc. v. Mid–Continent Cas. Co.*, 242 S.W.3d 1, 17 (Tex. 2007) ("[A] first party claim is stated when 'an insured seeks recovery for the insured's own loss,' whereas a third-party claim is stated when 'an insured seeks coverage for injuries to a third party.'" (quoting *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 54 n.2 (Tex. 1997))). Here, a third-party (Hill) allegedly suffered a loss and sued the insured (Aldous), who then sought coverage from the insurer (Darwin). Viewed this way, this is not a claim involving the insured's claim of loss, meaning there is no duty of good faith and fair dealing between the insurer and insured. *See Eland Energy*, 709 F.3d at 520.

Aldous attempts to distinguish *Eland Energy* by creating two categories of duty-to-defend disputes. In the first batch, you have mishandled defenses, and *Eland Energy* fits into this category because there we held that the plaintiff failed to "show that Texas law recognizes a cause of action for an insurer's mishandling of third-party claims." *Id.* at 520. In the second batch, you have failure-to-pay cases, where the insurer did not pay for the defense as required by law. We cannot accept this distinction because *Eland Energy*'s holding is that the duty of good faith and fair dealing simply does not *exist* in the present scenario. *See id.* It would be a strange duty if its existence depended on whether or how it was violated.

Aldous's argument, however, is not without force. For in *Lamar Homes*, at least for purposes of the Prompt Payment Act, the Supreme Court of Texas held that "an insured's claim for defense costs is a first-party claim because it

concerns a direct loss to the insured; that is, the claim does not belong to a third party." 242 S.W.3d at 17. Ultimately, we find *Lamar Homes* inapt.

*Lamar Homes* did not hold that a duty of good faith and fair dealing runs from insured to insurer in circumstances where the duty to defend was triggered and the insurer failed to adequately cover the defense. Indeed, the case had nothing to do with the duty of good faith and fair dealing and concerned statutory, rather than common law, duties. It would be odd if a ruling on the Prompt Payment Act dramatically affected the common law duties of insurers. *Lamar Homes*, 242 S.W.3d at 16 (describing the issue presented as "whether the 'Prompt Payment of Claims' statute . . . applies to an insurer's breach of the duty to defend"). It would be odder still if the catalyst for that change in the law was the Texas legislature's decision to add the term "first-party claim" to the Prompt Payment Act. *See id.* at 24 (Brister, J. dissenting) (noting the addition of the phrase in 1991).

Notably, Aldous has pointed to no Texas courts interpreting *Lamar Homes* to revise the common law duties of insurers in the manner for which she advocates. Most courts that have considered the possibility have rejected it.[7] Further, under Aldous's view, the duty of good faith and fair dealing only exists (and is violated) when the duty to defend has also been breached. In rejecting this theory, we follow the Supreme Court of Texas' pertinent instructions. *See Head Industrial*, 938 S.W.2d at 28–29 ("[A]n insured is fully

---

[7] *See Allied World Specialty Ins. Co. v. Freese & Goss, PLLC,* Case No. 3:15-CV-02792-N, 2016 WL 6581922, at *3 (N.D. Tex. July 1, 2016) ("*Lamar Homes* . . . only interpreted the meaning of a 'first-party claim' within the context of the Texas prompt payment statute."); *One Beacon Ins. Co. v. T. Wade Welch & Assocs.*, Case No. CIV.A. H-11-3061, 2012 WL 2403500, at *6 (S.D. Tex. June 25, 2012) ("[T]he Texas Supreme Court was construing what the Texas Legislature meant for the statute to cover, not re-writing all of its prior caselaw relating to insurers' common law duties."). *But see Corinth Inv'rs Holdings, LLC v. Evanston Ins. Co.*, Case No. 4:13-CV-682, 2014 WL 4222168, at *11 (E.D. Tex. Aug. 25, 2014).

protected against his insurer's refusal to defend or mishandling of a third-party claim by his contractual and *Stowers* rights.").

4.     Aldous's Remaining Claims

Aldous's claims based on the Texas Insurance Code and Deceptive Trade Practices Act are barred as a matter of law under *Parkans International LLC v. Zurich Ins. Co.*, 299 F.3d 514 (5th Cir. 2002).  Under *Parkans*, "[t]here can be no recovery for extra-contractual damages for mishandling claims unless the complained of actions or omissions caused injury independent of those that would have resulted from a wrongful denial of policy benefits." *Id.* at 519.  We are not at liberty to second-guess this ruling.  *See Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008).

## C.     Darwin's Claims

1.     Money Had and Received/Equitable Reimbursement

In light of our judicial estoppel ruling, the district court's grant of summary judgment on Darwin's claim for money had and received cannot stand.  Aldous argues that judgment was improper for another reason: under Texas law, an insurer has no right of equitable reimbursement against its insured.  For the reasons that follow, as a federal court exercising diversity jurisdiction, we cannot endorse the district court's recognition of an insurer's previously unannounced equitable right of recovery against its insured.

In the words of the district court, an insurer "is entitled to recover to the extent it made overpayments," and overpayments are payments made but not actually required "under the insurance contract." *Aldous v. Darwin Nat. Assur. Co.*, Case No. 3:13-CV-3310-L, 2015 WL 1879677, at *5 (N.D. Tex. Apr. 24, 2015).  Under this approach, an insurer that makes payments under a policy while coverage is disputed can sue its insured, claiming a right to equitable reimbursement if the coverage dispute is resolved in its favor.  And,

because the claim is equitable in nature, the insurer need not point to any policy provision granting the right. Rather, the right exists by default.

Under Texas law, if an insurance company disputes coverage with its insured but nonetheless settles the action on the insured's behalf, there is no right to equitable reimbursement if the third party's claims are later determined to be uncovered by the policy. *Matagorda County*, 52 S.W.3d at 135. This is true even where the insurer has provided coverage under a reservation of rights. *Id.* at 131. But nothing stops insurers from including a right to reimbursement in its Policy or obtaining "the insured's clear and unequivocal consent to the settlement and the insurer's right to seek reimbursement." *Id.* at 135. The Supreme Court of Texas later described *Matagorda County* broadly, as a case "declining to recognize an implied-in-fact, an implied-in-law, or an equitable reimbursement right outside of the insurance policy's provisions." *Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc.*, 246 S.W.3d 42, 45 (Tex. 2008).

Under the broad reading of *Matagorda County* suggested by *Frank's Casing*, Darwin has no equitable reimbursement right outside of the insurance policy's provisions. Both of those cases, however, apply where an insurer "settles a claim against its insured when coverage is disputed." *See id.* at 43. And much of their reasoning is specifically tailored to that scenario. *See id.* at 46. ("Our analysis in *Matagorda County* highlighted the dilemma faced by both insurer and insured when a claimant presents a settlement demand within policy limits and coverage is uncertain."). Thus, those cases strongly suggest (but do not necessarily dictate) that insurers have no right to equitable reimbursement of costs expended in defending an insured where coverage exists but the scope of the duty to defend is disputed and later resolved in favor of the insurer. *See Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 564 (5th Cir. 2010) ("In making our *Erie* guess, we look first to those

No. 16-10537

Texas Supreme Court cases that, while not deciding the issue, provide guidance as to how the Texas Supreme Court would decide the question before us.").

The district court did not give due regard to *Frank's Casing* and *Matagorda County*. Moreover, instead of basing its decision on Texas law, the district court relied primarily on Fifth Circuit cases that were not applying Texas law. *See Charla G. Aldous, P.C.*, 92 F.Supp.3d at 573 (relying on *United States v. St. Bernard Par.*, 756 F.2d 1116, 1127 (5th Cir. 1985) (applying federal law), *Peavey Co. v. M/V ANPA*, 971 F.2d 1168, 1176 (5th Cir. 1992) (applying Louisiana law), and *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 656 (5th Cir. 2004) (applying federal admiralty and maritime law). Its subsequent "Supplemental Memorandum Opinion and Order" further reveals that the district court's ruling lacked a basis in Texas law. The district court recognized that *federal courts* have permitted "restitution for overpayment as a means of recovery under ERISA" and concluded that, "[b]y analogy, the reasons for allowing recovery for overpayments in the context of ERISA are applicable to the court's decision today, as the concerns also pertain to contracts for liability insurance." *See Aldous*, 2015 WL 1879677, at *5. Federal courts are not to make state law, and certainly not "by analogy" to federal law. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 69, 58 S.Ct. 817, 818 (1938) ("There is no federal general common law. Congress has no power to declare substantive rules of common law applicable in a state . . . . And no clause in the Constitution purports to confer such a power upon the federal courts.").

The district court's Supplemental Memorandum Opinion and Order also included citations to Texas cases. While the district court sharpened its analytical focus, the cases cited do not support its conclusion. The district court relied on *Fortune Production Co. v. Conoco, Inc.*, 52 S.W.3d 671 (Tex. 2000), and *Southwest Electric Power Co. v. Burlington Northern R.R. Co.*, 966 S.W.2d

No. 16-10537

467 (Tex. 1998).  We reject application of those cases for the simple reason that they do not involve contracts for insurance.  *See Miga v. Jensen*, 299 S.W.3d 98, 103 (Tex. 2009).

As plaintiff, Dennis Miga had initially been very successful in litigation against Ronald Jensen, securing a judgment in excess of $20 million that was largely upheld on appeal.  *Id.* at 100.  Because interest was accruing at an alarming rate, Jensen paid the judgment just prior to filing a petition for review with the Supreme Court of Texas.  *Id.*  Texas' highest court then sided with Jensen on the merits, again rendering judgment in favor of Miga but in an amount just over $1 million.  *Id.* at 101.  Miga took the position that the reversal had no financial consequences and denied any obligation to repay the $21,560,150.67 he had received beyond the proper, adjusted judgment amount. *Id.*  Jensen then filed suit for restitution, and the case again wound up before the Supreme Court of Texas, which applied the "restitution-after-reversal rule" and held in Jensen's favor.  *Id.* at 101–02.

Miga argued that *Frank's Casing* (which the Supreme Court of Texas described broadly as a case "in which we declined to recognize an equitable right of reimbursement") should apply and bar Jensen's claim.  The argument was rejected:

> This case involves restitution upon reversal of a judgment, not insurers seeking restitution from an insured on a third-party claim, against the backdrop of a highly regulated industry. . . . Restitution in insurance-related cases involves policy concerns not present here:
>> [D]isputes between insurers and policyholders over the insurer's duty to pay a claim, or to settle or defend a claim brought against the policyholder, present special difficulties for the law of restitution, because the insurer's duty to indemnify and defend is subject to extensive regulation under local law.

*Id.* (quoting Restatement (Third) § 35, cmt. c. (Tentative Draft No. 3, 2004)).

21

*Miga* suggests that an "equitable right to reimbursement" does not exist at all in the context of insurance cases. It shows that recognition of such a right would be only proper after a thorough and conscientious review of Texas' regulatory scheme in light of the unique "policy concerns" implicated. And it firmly establishes that we cannot look to generic contract cases when trying to identify equitable rights of insurers against their insureds.

In light of *Matagorda County*, *Frank's Casing*, *Miga*, and our constrained role, our obligation is clear. We have been asked to recognize, as a matter of Texas law, an insurer's right to equitable reimbursement for "overpayments" of defense costs. But "it is not for us to adopt innovative theories of recovery for Texas law." *Dean*, 821 F.2d at 284. Summary judgment should have been granted in favor of Aldous with respect to Darwin's claims for equitable reimbursement (however denominated).[8]

2.     Breach of Contract

Darwin also seeks the return of money that was not *overpaid* but that was *properly paid*. Darwin believes the legal fees Hill paid directly to Aldous should have instead been paid directly to Darwin, at least in a measure commensurate with the legal fees Darwin spent on Aldous's behalf. This scenario seems ready-made for subrogation. *See Fortis Benefits v. Cantu*, 234 S.W.3d 642, 645 (Tex. 2007) (explaining how subrogation rights "prevent the insured from receiving a double recovery, first from the insurer, then from the third party"). Darwin paid at least some measure of Aldous's legal fees, and Aldous then recovered legal fees from Hill. Understandably, Darwin thinks it is entitled to some of the money paid by Hill.[9]

---

[8] Based on this holding, we do not need to reach Aldous's argument that the district court misapplied the law relating to claims for money had and received.

[9] Aldous contends that allegations of a windfall recovery are "repudiated by the evidence" because she "invested over $1.1 million of her own resources" in prevailing against

For whatever reason, however, Darwin did not seek subrogation against Hill. That is, it did not intervene in the prior litigation, step into the shoes of Aldous, and assert (for its own benefit) Aldous's right to attorney's fees against Hill. Darwin concedes that it cannot assert subrogation rights against Aldous, its own insured. This result follows from the very nature of subrogation rights. As a "purely conceptual" matter, an insurer cannot be subrogated against "an insured because an insurer who seeks subrogation stands in the shoes of the insured." *State Farm Mut. Auto. Ins. Co. v. Perkins*, 216 S.W.3d 396, 401 (Tex. App. 2006). "Because a person cannot sue himself for damages, that person's insurer, who stands in the person's shoes for subrogation purposes, cannot sue the person either." *Id.*

According to Darwin, this analysis misses the point. Darwin isn't seeking to assert *subrogation* rights. Rather, Darwin is alleging Aldous violated the terms of the Policy—ordinary breach of contract. Thus, Darwin argues it "had a subrogation right against Hill as a result of its payments on Aldous' behalf, and Aldous impaired Darwin's subrogation rights by successfully suing Hill for money paid by Darwin that Aldous recovered and then withheld." Or, as stated in the reply brief, "Darwin had the right to step into Aldous' shoes to recover the defense fees it paid against Hill, but is not attempting to do so in this lawsuit because Aldous prevented it from doing so." Thus, with its contract claim, Darwin is attempting to belatedly achieve the same ends it should have achieved through subrogation. Its labored argument fails.

The relevant Policy provision provides:

The **Insurer** shall be subrogated to all **Insureds'** rights of recovery against any person or organization. All **Insureds** shall

---

Hill. In deciding this appeal, we need not determine whether she stands to double-recover or whether such a result would be permissible in this case.

assist the **Insurer** in effecting any rights of indemnity, contribution and apportionment available to any **Insured**, including the execution of such documents as are necessary to enable the **Insurer** to pursue claims in the **Insureds'** names and shall provide all other assistance and cooperation which the **Insurer** may reasonably require. All **Insureds** shall cooperate with the **Insurer** and do nothing to jeopardize, prejudice or terminate in any way such rights.

The **Insurer** shall not exercise any such rights against any **Insureds** except as provided herein. Notwithstanding the foregoing, however, the **Insurer** reserves the right to exercise any rights of subrogation against any **Insured** with respect to any **Claim** brought about or contributed to by the intentional, criminal, fraudulent, malicious or dishonest act or omission of such **Insured**.

The Policy provides Darwin with subrogation rights, but Aldous did not breach the Policy by seeking attorney's fees against Hill. Indeed, she arguably assisted Darwin, who could have benefited from the adjudication.[10] Darwin should have asserted its subrogation rights against Hill. *See, e.g.*, *Fortis Benefits*, 234 S.W.3d at 648; *Ortiz v. Great S. Fire & Cas. Ins. Co.*, 597 S.W.2d 342, 343 (Tex. 1980). Instead, it sat on its rights and, after being sued, brought claims directly against its insured. As the district court stated, "[Darwin] provides no case law to support a conclusion that receiving a judgment for attorney's fees is tantamount to jeopardizing, prejudicing, or terminating Darwin's subrogation rights."[11] *Aldous*, 2015 WL 1879677, at \*2.

---

[10] If anything, Darwin's *inaction* is problematic. *See Ortiz v. Great S. Fire & Cas. Ins. Co.*, 597 S.W.2d 342, 344 (Tex. 1980) ("[W]hen an insurer does not assist in the collection of damages from the third party tortfeasor, it must pay its share of the costs and expenses incurred in obtaining recovery from the third party, including attorney fees.").

[11] In *Fortis Benefits*, the insurance policy at issue included a "Right of Reimbursement," which provided, in pertinent part: "If benefits are paid under this plan, and any Covered Person recovers against any person or organization by settlement, judgment or otherwise, We have a right to recover from that Covered Person an amount equal to the amount We have paid." *Fortis Benefits*, 234 S.W.3d at 645 n.11. Darwin has not claimed any contractual right to reimbursement and yet essentially seeks the same end. "[I]nsurers are well equipped to evaluate and reduce risk by, for example, 'drafting policies to specifically

No. 16-10537

## IV.    CONCLUSION

The district court's judgment is REVERSED and, with respect to Darwin's breach of contract and equitable claims, ruled in favor of Aldous.  The case is REMANDED for proceedings consistent with this opinion.

---

provide for reimbursement,'" and we will not rewrite the contract to grant Darwin rights beyond those it included in the contract. *Id.* at 649 (quoting *Matagorda County*, 52 S.W.3d at 136).